[Civ. No. 8893. Third Dist. June 21, 1956.]

A. B. BAILEY et al., Respondents, v. THOMAS B. LEEPER et al., Appellants.

E. R. Vaughn for Appellants.

Freitas, Allen, McCarthy & Bettini for Respondents.

VAN DYKE, P. J.—This is an appeal from a judgment setting aside as fraudulent the transfer of shares of stock in Pacific Coast Aggregates, Inc., a corporation, made by appellant Thomas B. Leeper to his wife, Abbie.

During 1950 and 1951 respondents, who are attorneys at law, performed professional services for appellant Thomas B. Leeper. On September 17, 1952, they brought suit to recover the reasonable value of those services, less the sum of $200 theretofore paid. On September 17, 1954, they obtained a judgment in the sum of $8,015, plus costs. Intermediate the commencement of said action and the entry of said judgment respondents brought the present action to set aside the transfer of the shares on the ground that the transfer had been made without consideration and with intent on the part of both appellants to defraud respondents. Judgment was entered in respondents' favor and supportive thereof the court made the following findings of fact: That prior to the month of May, 1953, Thomas B. Leeper owned "approximately 1,700 shares" of stock of the Pacific Coast Aggregates, Inc., a corporation; the shares had a value as of the time of rendition of judgment of $11,800; that between

September, 1952 and May, 1953 Thomas transferred said shares of stock to his wife Abbie, together with all the property of which he was then possessed; that this transfer was made without a fair consideration; and that it rendered Thomas insolvent. No further findings were either made or requested.

Appellants challenge the judgment against them on two fronts. First, they say that procedurally the trial court committed error in failing to make specific findings as to all properties, including the shares transferred, as to their value when transferred, and as to the obligations entered into by Abbie in consideration of the transfer to her. They say the court's findings on the fairness of the consideration is nothing more than a conclusion of law. Second, they aver that, treating the court's findings as to consideration to be a finding of ultimate fact, it is not supported by the evidence.

We will first consider the evidence as to its sufficiency to support a holding that fair consideration had not been given by Abbie for the transfer to her by Thomas of all his assets. Although the trial court confined its findings and its judgment, as noted above, to the shares of stock in Pacific Coast Aggregates, these shares did not constitute the whole of the property transferred. Rather, the shares constitute the residuum of the property transferred still in the hands of Abbie. Both Thomas and Abbie testified that when the transfers were made, the two of them had already by an oral agreement made in June of 1952 agreed upon the conditions for the transfer. This agreement was made while Thomas was in the Yolo County jail under stay of execution from a felony conviction. The agreement was that Thomas would transfer all of his assets to Abbie, and that in consideration of the conveyance, she would bind herself to do the following things: (1) Discharge all of Thomas' debts, both secured and unsecured, a list of which Thomas had made up (this list did not contain any reference to the debt to respondents, and Thomas testified that he left that debt out of the list because he had received no demand for money from them although their services had been completed and he did not consider he owed respondents anything); (2) Devote the properties or moneys that might be left in her hands to her support and to the support of Thomas. Thereafter, and in August of 1952, following the oral agreement for transfer, Thomas transferred to Abbie all of his assets. He conveyed to her two ranches, one in Sutter County

and one in Sacramento County. He transferred to her his bank account in the Merchants' National Bank, 31 shares of stock in the Merchants' National Bank, a banking corporation, and 1,600 shares of stock in Pacific Coast Aggregates, Inc. At an earlier date he had transferred to her an automobile which had not been fully paid for. Abbie completed the payments, after which she sold the car.

The testimony as to values is unsatisfactory. However, as to the ranches, it appears that there was evidence from which the court could infer they were valued at $40,000. Under cross-examination, Thomas was asked this question: "Q. Isn't it true that the approximate value of these ranches in 1952 was $40,000; is that right? A. That is an estimate, could vary some." The only other evidence as to the value of the ranches is that furnished by the actual sale of the ranches which Abbie made shortly after she received them. She sold the two ranches for a total of $28,760. It satisfactorily appears that the value of the Merchants' National Bank shares was $4,650 in 1953. There is no suggestion that this value varied materially between the date of transfer and the date as to which the values were fixed. It was stipulated that the Pacific Coast Aggregates shares were worth $6.00 per share in 1953, but Thomas testified that when he assigned the stock to Abbie it was worth not over $5.00 a share. The bank account was found to have had a balance of $200 at the time of transfer, which sum Abbie received. To pass good title to the ranches Abbie had to pay out a total sum of $14,028.85, and from the proceeds she also paid various other sums totaling $7,962.50. She repaid to herself a loan she had made to Thomas in the sum of $1,000. She paid his debt to the Merchants' National Bank in the sum of $1,847.50. She paid off a loan he had made on his life insurance in the sum of $900. She paid back rent he owed on his office in the sum of $400. She paid $75 to the telephone company, and she paid Mr. Vaughn for atorney's services the sum of $1,800. She paid lodge dues in the sum of $100, and in addition she forwarded to Thomas such moneys as the authorities would permit him to receive. These sums aggregated $840. After his parole and for a period of five months she paid him $200 a month for his support. She expended several thousand dollars in improving her home in which she and Thomas reside. When Thomas was indicted for the felony of which he was convicted, there were indicted with him several other persons, including one Green

whose bond prior to trial was set at $10,000. Both Abbie
and Thomas testified that prior to her marriage to him Thomas
had persuaded her to go upon Green's bond, promising her
that he would save her safe and harmless from loss. Green
failed to appear for his trial and the bond was forfeited.
In due course judgment was obtained by the county of Yolo
against Abbie in the sum of $10,000, and execution was
filed against her home. From the proceeds of the properties
transferred to her, Abbie paid this judgment of $10,000.

Excluding the value of the automobile transferred to her,
the record supports the following values of property trans-
ferred:

| | |
|---|---:|
| Ranches | $40,000 |
| Bank Account | 200 |
| Merchants' National Bank shares | 4,650 |
| Pacific Coast Aggregates shares | 8,000 |
| Total | $53,850 |

If, for the $40,000 value, based as it is upon the testimony
of Thomas, we substitute the sale price actually received,
the total is reduced to $42,610.

Turning now to the other side of the ledger, the court
could disallow payments made by Abbie in performance of
her obligation under the assignment agreement which were
for the purpose of supporting Thomas and could also dis-
allow such sums as Abbie spent upon her home, since that was
not included within the obligations she assumed. As to dis-
allowance of the items paid for the support of Thomas, see
*Hansen* v. *Cramer*, 39 Cal.2d 321 [245 P.2d 1059, 30 A.L.R.
2d 1204]; *Baxter* v. *Baxter*, 19 Cal.App. 238, 239 [125 P.
359]; *First Nat. Bank* v. *Smith*, 217 Cal. 394, 395-396 [18
P.2d 930]; *Sudbrock* v. *Kroener*, 136 Cal.App. 624, 630 [29
P.2d 435]. Crediting all other disbursements Abbie made,
they total the sum of $30,151.35. The disparity in value
between the consideration received by Abbie and the obliga-
tions incurred by her is thus shown to be so great that the
finding of the court that the transfer which rendered Thomas
insolvent was not for a fair consideration is amply sup-
ported.

Turning now to the contention that the cause should
be reversed for failure of the trial court to make necessary
findings, the following situation is presented: There was no
specific finding as to whether or not Thomas and Abbie had
ever entered into the antecedent oral agreement setting up

the conditions under which the transfers were to be made to her; there is no finding as to the values of the property transferred as of the date of transfer, which date is the critical date against which the validity of the transfers is to be tested. (*Rummel* v. *Zeigler*, 225 Iowa 613 [281 N.W. 159].) It seems obvious that no other date can be considered when a determination is being made as to whether or not the consideration received for the alleged invalid transfers was or was not a fair consideration. Fluctuating values after the date of transfer could neither be allowed to help or hinder the determination of fair consideration. Generally as to what constitutes a fair equivalent or a fair consideration under the Fraudulent Conveyance Act see *Hansen* v. *Cramer*, *supra*, at page 324. There was no finding as to what specific allowances for expenditures made by Abbie as against the values of the assets transferred to her were allowed by the court. ▮ It is always the duty of the trial court to find on all material issues and this regardless of whether or not the appealing party made any request for special findings. (*Haight* v. *Tryon*, 112 Cal. 4 [44 P. 318].) As said in *Palpar, Inc.* v. *Thayer*, 82 Cal.App.2d 578, 584 [186 P.2d 748]:

"Under Code of Civil Procedure, section 647, 'the final decision' is 'deemed to have been excepted to' and the insufficiency of the finding to support the judgment may be urged on appeal although appellant neither excepted to the findings nor sought their amendment."

▮ A failure to find upon material facts may be held to be reversible error. (*Krauss* v. *Strop*, 47 Cal.App.2d 452 [118 P.2d 332].) However, if we assume the trial court fell into error when it did not make the specific findings, the lack of which we have noted, still the error is one in procedure and therefore not reversible under the Constitution (art. VI, § 4½), unless from an examination of the entire record we can say that the error complained of has resulted in a miscarriage of justice.

▮ Looking at the record now in the light most favorable to appellants, we will assume that the appellants made the agreement in June of 1952, which they say they did; we will assume that the ranches transferred were worth no more than the sale price; we will assume that the other values be taken as either stipulated to or as the least values testified to; we will allow all the expenditures made by Abbie in consideration of the transfer, excepting only the expenditures for future support and upon her home, which as a matter of law cannot

be accepted; and the result still is that there is so great a disparity between the values received and the obligations assumed, that the trial court would have made and should have made the same decision that it did make, that is, that the consideration was not fair within the meaning of that term as used in the Fraudulent Conveyance Act. The net result is that by transfers which left him insolvent and unable to respond to the demands of his creditors, the respondents herein, Thomas changed his position from that of a solvent debtor to that of an insolvent debtor, and there remains in the hands of his transferee after the performance of all obligations imposed upon her by her agreement with Thomas, more than enough property, value wise, to answer the claims of respondents. ■ The question of fairness of consideration must be approached from the standpoint of the creditor; and, so approached, it becomes evident that whatever error there may have been in the failure of the court to make specific findings of fact, the error did not result in a miscarriage of justice, and the judgment rendered is proper and fair.

The judgment appealed from is affirmed.

Peek, J., and McMurray, J. pro tem.,* concurred.

A petition for a rehearing was denied July 16, 1956, and appellants' petition for a hearing by the Supreme Court was denied August 16, 1956.

*Assigned by Chairman of Judicial Council.