No. 14202

IN THE SUPREME COURT OF THE STATE OF MONTANA

1979

MONTANA ASSOCIATION OF CREDIT
MANAGEMENT, a corporation,

Plaintiff and Respondent,

-vs-

ELMER HERGERT et al.,

Defendants and Appellants.

Appeal from: District Court of the Thirteenth Judicial District,
Honorable Charles Luedke, Judge presiding.

Counsel of Record:

For Appellants:

Gary Wilcox argued, Billings, Montana

For Respondent:

Fred Dugan argued, Billings, Montana

Submitted: March 22, 1979

Decided: APR 26 1979

Filed: APR 26 1979

Thomas J. Kearney
Clerk

Mr. Chief Justice Frank I. Haswell delivered the Opinion of the Court.

Defendant appeals from a judgment rendered by the District Court, Yellowstone County, sitting without a jury, that plaintiff may proceed to levy execution against certain mining equipment, title to which the court concluded was held by defendant Elmer Hergert as involuntary trustee for Montana Mining and Development Company, now defunct, a corporation of which Hergert was a director.

In the fall of 1973, one James M. "Mike" Morgan and several investors, including defendant-appellant, Elmer Hergert, joined together for the purpose of forming a mining venture. Morgan owned a lease on mining property near Virginia City, Montana. The lease and the actual working of the mine were to be Morgan's contribution to the venture, while the other parties were to invest capital. Appellant Hergert contributed a total of $30,000; a check for $15,000 on October 31, 1973, and another check for the same amount two and one-half months later on January 14, 1974. The other investors contributed much smaller sums. The initial structure of the venture was such that each investor received for his investment a percentage interest in the lease owned by Mike Morgan.

On November 1, 1973, Morgan used some of the invested capital to make a $5,000 down payment on a piece of equipment known as a trommel, or washing plant, for use in the mining operation. The remaining balance on the trommel was to be paid in two major installments, with a $6,000 payment due in 60 days and the remaining balance of $11,000 due in late spring of 1974.

In February 1974 the mining venture was incorporated as "Montana Mining & Development Co." A bank account was opened in the corporate name, into which the invested funds were deposited. No formalities of incorporation other than the filing of articles, however, were ever complied with; no bylaws were

- 2 -

adopted, no meetings held, no stock certificates issued. Appellant Hergert's name appeared in the articles of incorporation as a director of the corporation, but he never performed any functions in that capacity or received any salary or dividends.

The actual operation of the mine was conducted by Mike Morgan and his father. It was they who purchased the mining equipment and incurred the expenses of the venture, and only they were authorized to write checks on the corporation's account. No transfer to the corporation of the lease owned by Mike Morgan, and supposedly divided into percentages among the investors, was ever made.

A meeting of the investors in the venture was held on November 14, 1974. The meeting revealed that the Morgans had been less than efficient in operating the mine. They had accumulated substantial past due indebtedness and had failed to make the payments on the trommel. The trommel was to be repossessed the next day. To avoid this eventuality, it was agreed that appellant Hergert would obtain a loan and pay off the balance on the trommel. Hergert contacted his banker and was informed that he could borrow the necessary funds only if title to the trommel would be in his individual name. The loan was made and appellant paid the balance due on the trommel of $12,000 plus $682 interest, receiving in return a bill of sale reflecting that he was its individual owner.

The original purchase price of the trommel was $22,000. At the time Hergert took title in his individual name, $9,940 had been paid towards that purchase price; $5,000 by Mike Morgan on November 1, 1973 (prior to incorporation) from the funds invested by Hergert, and $3,500 in cash and $1,440 in gold by the corporation during the year 1974.

Among the obligations incurred by Morgan in the operation of the mine was one for the purchase of equipment from Tri-State

- 3 -

Equipment, Inc. This was a matured obligation, due and payable, at the time "ownership" of the trommel was assumed by Hergert. When Montana Mining and Development Co. failed to meet this obligation, the account was assigned for collection to respondent, Montana Association of Credit Management. A complaint demanding judgment on the account in the sum of $4,494.47 was filed in the District Court on March 11, 1975. Judgment by default was entered in favor of Montana Association of Credit Management on April 9, 1975, for $4,583.28, the amount due plus interest.

To satisfy the default judgment, Montana Association of Credit Management attempted under a writ of execution to attach the property of Montana Mining and Development Company. The mining company was insolvent and the only piece of equipment of any significant value used in its operations was the trommel. When respondent served notice of attachment under execution on the trommel, however, Hergert denied that the insolvent corporation had any interest in it. He maintained that the bill of sale issued to him in his individual name when he had paid off the balance due on the trommel was conclusive that it was not an asset of the corporation and could not be attached to satisfy the corporate debts.

On December 30, 1976, a complaint was filed in the District Court, Yellowstone County, by respondent Montana Association of Credit Management in an attempt to free the trommel for attachment. The complaint named both the corporation and Elmer Hergert, individually and as involuntary trustee for the corporation, as defendants. It was framed as two "claims", predicated on two separate although interrelated theories.

The first "claim" alleged that the other investors had agreed that Hergert was to take title to the trommel in the name of the corporation, or in his own name in trust for the corporation, but not individually. Thus, it was argued, Hergert was

in violation of his fiduciary duty as a director in denying any interest of the corporation in the trommel. The second "claim" alleged that the transfer to Hergert of the title to the trommel "rendered the Defendant corporation insolvent, was given without adequate or fair consideration, and in bad faith with respect to the Defendant corporation on the part of the Defendant Hergert." No statutory authority was cited in the complaint, but the language quoted from the second claim is taken from section 29-104, R.C.M. 1947, now section 31-2-311 MCA, of the Uniform Fraudulent Conveyance Act (UFCA).

The single prayer for relief encompassing the two "claims" requested, in pertinent part:

"1. That the Defendant, Montana Mining & Development Co., be adjudged to be the owner of and entitled to possession of the [trommel] . . .

"2. That the Defendant, Elmer Hergert, be declared to hold the same in trust for said Defendant.

"3. That it be adjudicated herein that Plaintiff holds a valid lien by attachment upon said property.

"4. That the Defendant, Elmer Hergert, be required to execute a proper instrument of transfer of the legal title to said property to the Defendant corporation, and that both Defendants be required to surrender possession of said property to the Sheriff of the County of Madison, State of Montana, subject to Writ of Execution levy and sale . . ."

On March 1, 1977, Hergert filed an answer to the complaint, specifically denying the allegations and praying that it be dismissed. No responsive pleading was ever filed on behalf of the corporation and default was entered against it.

Trial of the claims against Hergert was had on August 16, 1977 before Judge Charles Luedke. Extensive findings of fact and conclusions of law were subsequently entered concluding, in

summary, that the transfer of the trommel to Hergert by the corporation was voidable with respect to plaintiff because it was made without fair consideration at a time when the corporation was insolvent and was therefore in bad faith as to the creditors of the corporation as a matter of law. From the judgment subsequently entered ordering that plaintiff may proceed to levy execution on the trommel, this appeal has been brought.

We find this appeal to be entirely without merit. Because there are several matters of some consequence raised by appellant which we discuss further below, we will not go so far as to say the appeal is frivolous. The simple fact is, however, that here an insolvent corporation transferred its only major asset to appellant for approximately half of the asset's value. Seen from another perspective, appellant took title in his own name to a piece of property in which the corporation had more than $9,000 equity and gave the corporation nothing for that equity. The result of the transaction was that the rights of creditors who had relied on the responsibility of the corporation and its management in extending credit to them were infringed. This is clearly a proper case to disregard or set aside the conveyance as fraudulent under the UFCA.

Because plaintiff's complaint stated one of its claims in terms of an involuntary trust arising in Hergert for violating his fiduciary obligations as a director of the corporation, much of the argument in appellant's brief is directed to the applicability on these circumstances of section 86-210, R.C.M. 1947, now section 72-20-111 MCA, the statute concerning involuntary trusts. It is clear from the District Court's findings and conclusions, however, that the case was decided on the basis of the Uniform Fraudulent Conveyance Act (UFCA) rather than on the involuntary trust theory. Therefore, appellant's arguments

- 6 -

in this regard are superfluous and will not be rebutted herein.

The issues we must address to properly resolve this appeal are as follows:

1. Whether Montana Association of Credit Management was a proper party to the action.

2. Whether the attached property which is the subject of this suit was a corporate asset.

3. Whether there was sufficient evidence presented to support a finding of constructive fraud under the Uniform Frauulent Conveyance Act.

4. Whether the District Court was correct in its finding that less than fair consideration was paid for the trommel.

Hergert argues that plaintiff was not a proper party to the action because it was not a creditor of the corporation but merely an assignee of Tri-State Equipment Company. The validity of the instrument by which Tri-State Equipment Company assigned its claim against Montana Mining & Development to plaintiff Company for collection was not questioned by appellant. All that is necessary to constitute a plaintiff the "real party in interest" within terms of a statute authorizing him to sue is that he be vested with legal title, and hence an assignee of a cause of action for collection may sue. Rae v. Cameron (1941), 112 Mont. 159, 114 P.2d 1060; Washington Water Power Co. v. Morgan Electric Co. (1968), 152 Mont. 126, 448 P.2d 683.

The issue of whether the trommel was a corporate asset merely goes to the sufficiency of the evidence to support the court's finding to that effect. Hergert contends that the trommel was not a corporate asset because it was purchased some three months prior to incorporation, with funds supplied by him. He further argues that the only evidence at trial that the trommel was a corporate asset was an unaudited balance sheet prepared by

Mike Morgan and supported only by Morgan's self-serving testimony.  Respondent rebuts these contentions by pointing out that Hergert's funds were invested in the venture, not in the trommel, and that substantial payments on the trommel were made after incorporation with funds drawn from the corporate bank account and with gold produced by the corporation utilizing the trommel in the corporate enterprise.  "The standard of review in a nonjury case is simply to determine if there is substantial evidence to support the findings of the trial court.  This Court will not reverse such findings of fact unless there is a clear preponderance of evidence against the findings."  Hayden v. Snowden (1978), ____Mont.____, 576 P.2d 1115, 1117, 35 St.Rep. 367, 369, citing Merritt v. Merritt (1974), 165 Mont. 172, 177, 526 P.2d 1375.  " . . . the credibility and weight given to the witness, especially where the evidence is conflicting, is a matter for the District Court's determination in a nonjury case." Olson v. Carter (1977), ____Mont.____, 572 P.2d 1238, 1240, 34 St.Rep. 1539, 1541, citing Miller v. Fox (1977), ____Mont.____, 571 P.2d 804, 34 St.Rep. 1367.  We find no error.

The remaining two issues of whether there was sufficient evidence to support a finding of constructive fraud under the UFCA and whether the District Court correctly found that Hergert had not paid fair consideration for the trommel are interrelated and will be addressed together.  Prefatorily, we note that appellant's arguments, both in his brief and during oral presentation, relied on a line of authority represented by Polk v. Polk (1972), 210 Kan. 107, 499 P.2d 1142, for the proposition that constructive fraud can only be found where certain "badges of fraud", such as intent to hinder, delay, or defraud creditors, or cooperation between a grantor and grantee to that end, are present. Polk did not arise under the UFCA and has no bearing on this case. The UFCA declares certain conveyances to be fraudulent regardless

of the presence or absence of any actual intent to defraud. 37 Am Jur 2d Fraudulent Conveyances §3.

Montana has adopted the UFCA as Title 29, Chapter 1, R.C.M. 1947, now Title 31, Chapter 2, Part 3, MCA. Section 29-104, R.C.M. 1947, now section 31-2-311 MCA, provides:

> "Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration."

It is beyond dispute that a corporation is a "person" within the meaning of the UFCA. See Vol. 7A Uniform Laws Annotated, Fraudulent Conveyance Act §4 Note 32. Thus, the only questions the District Court faced in reaching its conclusion here were whether Montana Mining & Development Company was insolvent at the time Hergert took title to the trommel in his own name or was rendered insolvent thereby, and whether the conveyance to Hergert was made without fair consideration.

In a trial memorandum submitted to the District Court in conjunction with this action, Hergert admits that the corporation was insolvent at the time he "purchased" the trommel. Trial Memorandum of Elmer Hergert, p. 6, line 6-7. There is therefore no issue as to sufficiency of the evidence in that regard.

As to the issue of fair consideration, the UFCA provides:

> "Fair consideration is given for property, or obligation,
>
> "(a) When in exchange for such property, or obligation, as a fair equivalent therefore, and in good faith, property is conveyed or an antecedent debt is satisfied, or
>
> "(b) When such property, or obligation is received in good faith to secure a present advance or antecedent debt in amount not disproportionately small as compared with the value of the property or obligation obtained." Section 29-103, R.C.M. 1947, now section 31-2-303 MCA.

Hergert directs our attention to White v. Nollmeyer (1968), 151 Mont. 387, 443 P.2d 873, where we said that the test

to be applied to determine fair consideration for purposes of the UFCA is "whether the disparity between the true value of the property transferred and the price paid is so great as to shock the conscience and strike the understanding at once with the conviction that such transfer never could have been made in good faith." Nollmeyer, 151 Mont. at 406, 443 P.2d at 883. This language in Nollmeyer is taken from Hart-Parr Co. v. Schafer (1925), 73 Mont. 429, 236 P. 675, and applies to the phrase "adequate consideration" in relation to an alleged fraudulent conveyance under the law in existence prior to enactment of the UFCA. It sets a much more stringent standard for finding a lack of fair consideration under the UFCA than do the authorities generally, and we hereby repudiate it.

Under the UFCA:

> "What is 'fair consideration' must, of course be determined on the facts and circumstances of each particular case, and the question must be determined from the standpoint of creditors. A 'fair consideration' may be defined generally as one which fairly represents the value of the property transferred, and as against creditors, a consideration that is merely good and valuable will not support a conveyance which will render the grantor insolvent. In general, the test of what constitutes a fair consideration would seem to be whether or not the conveyance renders the debtor execution proof . . . It is also essential that the consideration be not only fair, but that it pass into insolvent's estate." 37 C.J.S. Fraudulent Conveyances §140.

Applying these standards to the circumstances present here, it is apparent to us that the District Court was correct in its conclusion that Hergert did not give fair consideration when he assumed ownership of the trommel in his own name. In order to determine fair consideration, however, "the value of the property on the date of the transfer is the critical date against which the validity of the transfer must be tested." 37 Am Jur 2d Fraudulent Conveyances §18. The District Court's findings in this case did not include a specific finding of the value of the trommel on the date Hergert assumed ownership.

- 10 -

Respondent contends that even in the absence of such a specific finding, the surrounding circumstances were sufficient to support the conclusion that less than fair consideration was paid because at the time Hergert paid $12,000 and took title to the trommel in his own name, only a year had passed from the time its original purchase price was set at $22,000. Hergert, on the other hand, argues that without a specific finding of the value of the trommel on the date of the transfer to him, the court had no basis to determine whether or not the consideration paid was "fair". He contends that the District Court's failure to make such a specific finding requires reversal, and cites Bailey v. Leeper (1956), 142 Cal.App.2d 460, 298 P.2d 684, in support of that contention. Hergert has misconstrued Bailey; the case stands for just the opposite principle. In a suit to set aside a fraudulent conveyance, where the disparity between value received and obligations assumed is so great that the trial court would and should have made the same decision, failure to make a specific finding of the value of the property transferred as of the date of the transfer is not reversible error. Bailey v. Leeper, supra. We hold that the circumstances present here fall within this rule.

Section 29-109, R.C.M. 1947, now section 31-2-321 MCA, provides in pertinent part:

> "(1) Where a conveyance or obligation is fraudulent as to a creditor, such creditor, when his claim has matured, may as against any person except a purchaser for fair consideration without knowledge of the fraud at the time of the purchase or one who has derived title immediately or mediately from such a purchaser:
>
> "(a) have the conveyance set aside or obligation annulled to the extent necessary to satisfy his claim; or
>
> "(b) disregard the conveyance and attach or levy execution upon the property conveyed."

The judgment entered here by the District Court ordered that plaintiff may proceed to levy execution against the trommel.

This is a remedy clearly within paragraph (1)(b) above.  The District Court has properly applied the UFCA in all respects. The judgment appealed from is affirmed.

_____
Chief Justice

We concur:

_____

_____

_____
Justices