**In re Scott Barry KELSEY, Debtor.**

**Tracy Lynne Zubrod, Trustee, Plaintiff–Appellee,**

v.

**Denise L. Kelsey, Defendant–Appellant,**

and

**Scott Barry Kelsey, Defendant.**

BAP No. WY–01–008.

Bankruptcy No. 99–21200.

Adversary No. 00–2019.

United States Bankruptcy Appellate Panel of the Tenth Circuit.

Dec. 19, 2001.

---

Ken McCartney of The Law Offices of Ken McCartney, P.C., Cheyenne, WY, for Denise L. Kelsey.

Paul Hunter, Cheyenne, WY, for Tracy Lynne Zubrod, Trustee.

Before BOULDEN, CORNISH, and KRIEGER, Bankruptcy Judges.

## OPINION

KRIEGER, Bankruptcy Judge.

Defendant/Appellant Denise Kelsey (Mrs. Kelsey) appeals the judgment of the United States Bankruptcy Court for the District of Wyoming (Bankruptcy Court) in favor of Plaintiff/Appellee Tracy Lynne Zubrod, Trustee (Trustee), avoiding a transfer made to her by her husband, Debtor/Defendant Scott Barry Kelsey (Mr. Kelsey) as fraudulent pursuant to 11 U.S.C. § 548(a)(1)(B). Mrs. Kelsey argues that the Bankruptcy Court erred in determining that the cash withdrawn by Mr. Kelsey from a joint bank account on the

eve of bankruptcy was his property when he transferred it to her. Further, Mrs. Kelsey argues that she gave reasonably equivalent value for the cash she received.[1] For the reasons set forth below, we AFFIRM.

## I. Appellate Jurisdiction

The Bankruptcy Appellate Panel has jurisdiction over this appeal. The Bankruptcy Court's judgment is subject to appeal under 28 U.S.C. § 158(a)(1). Neither party opted to have this matter heard by the District Court for the District of Wyoming; therefore, the parties have consented to the jurisdiction of this Court. 28 U.S.C. § 158(c)(1); 10th Cir. BAP L.R. 8001–1(a).

## II. Standard of Review

Questions of law are reviewed *de novo*, questions of fact are reviewed for clear error, and matters of discretion are reviewed for abuse of discretion. *Pierce v. Underwood*, 487 U.S. 552, 558, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988). Mixed questions of whether the facts satisfy the proper legal standard require a *de novo* review if the question primarily involves the consideration of legal principles and require review under the clearly erroneous standard if the question is primarily a factual inquiry. *Clark v. Sec. Pac. Bus. Credit, Inc. (In re Wes Dor, Inc.)*, 996 F.2d 237, 241 (10th Cir.1993). The Bankruptcy Court's determinations that the cash withdrawn by Mr. Kelsey from the joint bank account was property of Mr. Kelsey when he transferred it to Mrs. Kelsey and that Mrs. Kelsey gave no value for the cash transferred are mixed questions of whether the facts satisfy the proper legal stan-

dard. The determination of whether a transfer is for reasonably equivalent value under 11 U.S.C. § 548 is largely a question of fact as to which considerable latitude must be given to the trier of fact. *Wes Dor, Inc.*, 996 F.2d 237 at 242. Likewise, the Bankruptcy Court's conclusion that a transfer of Mr. Kelsey's property occurred for purposes of 11 U.S.C. § 548 should be given latitude and reviewed for clear error. " 'A finding of fact is clearly erroneous if it is without factual support in the record or if, after reviewing all of the evidence, we are left with the definite and firm conviction that a mistake has been made.' " *Homestead Golf Club, Inc. v. Pride Stables*, 224 F.3d 1195, 1199 (10th Cir.2000) (quoting *Conoco, Inc. v. Styler (In re Peterson Distrib., Inc.)*, 82 F.3d 956, 959 (10th Cir.1996)).

## III. Background

Prior to his bankruptcy filing, Mr. Kelsey worked as an accountant and Mrs. Kelsey as a homemaker. The Kelseys maintained a joint checking account into which Mr. Kelsey deposited his paycheck and upon which both Mr. and Mrs. Kelsey wrote checks to pay family living expenses.

On September 16, 1999, an arbitration order and judgment in the amount of $18,142.00 was entered against Mr. Kelsey. On September 21 or 22, 1999, he withdrew all of the funds ($10,419.01) from the couple's joint checking account. With these funds he made two payments toward the couple's home mortgage, at least one of which was a pre-payment, paid the attorney who represented him in the arbitration matter and his bankruptcy counsel, and then gave one-half of the cash he had

---

1. Mrs. Kelsey also argues that the Bankruptcy Court erred in not recognizing Mr. Kelsey's wage exemption in the funds that are the subject of the dispute. This issue is not ad-

dressed in the Bankruptcy Court's opinion nor in the pleadings included in the Appendix on appeal and, therefore, will not be considered by this Court.

withdrawn ($5,210.00) to Mrs. Kelsey.[2] On September 22, 1999, after emptying the bank account, Mr. Kelsey filed his voluntary petition for relief under Chapter 7 of the Bankruptcy Code. Thereafter, Mrs. Kelsey redeposited $5,210.00 into the joint account.

The Trustee initiated an adversary proceeding against the Kelseys to avoid the $5,210.00 transfer by Mr. Kelsey to Mrs. Kelsey pursuant to 11 U.S.C. § 548. After trial, the Bankruptcy Court entered judgment in favor of the Trustee, setting aside the transfer as fraudulent and entering judgment against Mrs. Kelsey in the amount of $5,291.55,[3] plus interest. This appeal followed.

## IV. Discussion

Pursuant to 11 U.S.C. § 548, the Trustee may avoid, *inter alia*, any transfer of an interest of a debtor in property that was made within one year before the date of the bankruptcy petition if Mr. Kelsey voluntarily or involuntarily:

(A) made such transfer ... with actual intent to hinder, delay, or defraud any entity to which the debtor was or became ... indebted; or

(B) (i) received less than a reasonably equivalent value in exchange for [the transfer]; and

(ii) was insolvent on the date [of transfer.]

11 U.S.C. § 548(a)(1).

Mr. Kelsey admitted that he was insolvent on the date he gave the $5,210.00 to Mrs. Kelsey. However, Mrs. Kelsey claims that the funds given to her represented her share of the joint account and were not property owned by Mr. Kelsey. She also argues that if Mr. Kelsey transferred his funds, he received reasonably equivalent value for the transfer.

### A. Transfer of Property of the Debtor

■ In order to determine whether Mr. Kelsey transferred property belonging to him, we focus on the property transferred. Mrs. Kelsey argues that she owned one-half of the funds in the joint bank account; therefore, Mr. Kelsey did not transfer his property to her. Instead, he just liquidated her interest in the account. Had the funds remained in the bank account we might agree, but the facts do not support this argument.[4]

■ The relationship between a bank and a depositor is one of a debtor and a creditor. The depositor has no right to specific funds held by the bank, but instead retains a right to draw against the bank's general funds, which right is usually described as a chose in action. *Spratt v. Sec. Bank*, 654 P.2d 130, 134–35 (Wyo. 1982). *See also United States v. Cache Valley Bank*, 866 F.2d 1242, 1244 (10th Cir.1989); *United States v. Central Bank*, 843 F.2d 1300, 1304 (10th Cir.1988). As joint signators, Mr. and Mrs. Kelsey each had the right to withdraw all funds that were the subject of the joint account; therefore, each had a chose in action against the bank.[5]

---

**2.** It is unclear from the record whether this sum was delivered to her in cash or by way of a cashier's check in her name; however, the difference is immaterial.

**3.** This amount differs from the amount of the transfer. No explanation of the discrepancy appears in the record.

**4.** The Bankruptcy Court analyzed the ownership of funds in a joint account. We do not address this issue, concluding instead, based on the record, that the funds were not in the bank account at the time of the transfer.

**5.** Mr. and Mrs. Kelsey do not dispute Mr. Kelsey's right to withdraw all funds from the account. The depository agreement from the

When a depositor draws against a bank account, he or she transforms the chose in action into cash. Cash is owned by the possessor who can dispose of it as he or she chooses. Therefore, once Mr. Kelsey withdrew the funds from the joint account, he became the owner of the cash withdrawn. He was free to dispose of the cash as he chose because it was his property. When he gave $5,210.00 to Mrs. Kelsey, he made a transfer of his property. Therefore, the Bankruptcy Court correctly concluded that a transfer of Mr. Kelsey's property occurred within the year preceding the bankruptcy filing.

## B. Fraudulent Transfer

Mr. Kelsey's transfer of cash to Mrs. Kelsey is avoidable only if it was fraudulent under 11 U.S.C. § 548. We conclude that the Bankruptcy Court's conclusion in this regard is also correct. The transfer is avoidable if he did not receive reasonably equivalent value (11 U.S.C. § 548(a)(2)) or if the transfer was made with the actual intent to hinder, delay or defraud creditors (11 U.S.C. § 548(a)(1)(A)).

### 1. Reasonably Equivalent Value

■ The Bankruptcy Court concluded that Mr. Kelsey did not receive reasonably equivalent value for the cash he gave Mrs. Kelsey and therefore avoided the transfer as fraudulent pursuant to 11 U.S.C. § 548(a)(1)(B). Value is defined as "property, or satisfaction or securing of a pres-

ent or antecedent debt of the debtor, but does not include an unperformed promise to furnish support to the debtor or to a relative of the debtor." 11 U.S.C. § 548(d)(2)(A).

■ Mrs. Kelsey argues that her agreement to forego employment outside the home, to take care of the family, and to provide comfort, advice, and society as Mr. Kelsey's wife constitute value. She argues that such value is distinguishable from an "unperformed promise to furnish support to the debtor or to a relative of the debtor" because it includes past and present support and not simply a promise of future support. The Bankruptcy Court, citing cases from various jurisdictions,[6] concluded that value is limited to economic or monetary consideration, and that the care and comfort one receives from a marital relationship does not qualify. Value is not measured from the subjective, emotional perspective of Mr. Kelsey, but instead from the objective, economic perspective of his creditors. Although no one has disputed Mrs. Kelsey's commitment to her family, she did not offer, nor have we located a single case that holds, that the love and support of a spouse constitutes reasonably equivalent value for purposes of 11 U.S.C. § 548.[7]

■ The Tenth Circuit Court of Appeals has addressed the issue of value in the context of 11 U.S.C. § 548 and has con-

---

joint account was introduced as an exhibit at trial. It requires the signature of only one of the depositors to withdraw funds.

**6.** The Bankruptcy Court relied upon *In re Bargfrede,* 117 F.3d 1078, 1080 (8th Cir.1997); *Walker v. Treadwell (In re Treadwell),* 699 F.2d 1050, 1051 (11th Cir.1983); *Lim v. Greenfield (In re Greenfield),* 249 B.R. 856, 858 (Bankr. E.D.Mich.2000); *Ellenberg v. Bouldin (In re Bouldin),* 196 B.R. 202, 209 (Bankr.N.D.Ga. 1996); *Montana Association of Credit Man-*

*agement v. Hergert,* 181 Mont. 442, 593 P.2d 1059, 1064 (1979)(UFCA case).

**7.** Indeed, we note that if love and affection were sufficient consideration to support a pre-petition transfer between family members, the purpose of § 548 would be easily and invariably circumvented. A debtor would be free to transfer all non-exempt property to those who loved the debtor best, effectively depriving the bankruptcy estate of any assets from which distribution could be made to creditors.

cluded that even where indirect benefits are considered as "value," the value must be quantified. *Clark v. Sec. Pac. Bus. Credit, Inc. (In re Wes Dor, Inc.)*, 996 F.2d 237, 243 (10th Cir.1993). Here, the record is devoid of evidence quantifying the value of "benefits" Mrs. Kelsey bestowed on Mr. Kelsey in consideration of the cash transfer. We, therefore, conclude that the Bankruptcy Court correctly determined that Mrs. Kelsey provided no reasonably equivalent value cognizable under § 548.

### 2. Actual Intent to Hinder, Delay, or Defraud

The record also supports the avoidance of the transfer pursuant to 11 U.S.C. § 548(a)(1)(A) as having been made with actual intent to hinder, delay, or defraud creditors.[8] Intent to hinder, delay, or defraud creditors is rarely admitted by a debtor. Therefore, a court may consider circumstantial evidence establishing badges of fraud. *Taylor v. Rupp (In re Taylor)*, 133 F.3d 1336, 1338–39 (10th Cir. 1998). Relevant factors include whether the transfer was to an insider; whether the debtor retained possession or control of the property after the transfer; concealment of the transfer; pending or threatened litigation against the debtor at the time of transfer; a transfer of substantially all of the debtor's assets; absconding by the debtor; removal or concealment of assets; reasonably equivalent value in exchange for the transfer; the debtor's insolvency at the time of the transfer; the proximity in time of the transfer to the incurrence of a substantial debt; and a transfer of substantial business assets to a lienor followed by a subsequent transfer of such assets to an insider of the debtor. *Id.* Transfers to family members are subjected to particularly close scrutiny. The relationship of the parties in conjunction with other circumstances often provides compelling evidence of fraud. *See Mather v. Clancy (In re Honey Creek Entertainment, Inc.)*, 246 B.R. 671, 686 (Bankr. E.D.Okla.2000).

Here, Mrs. Kelsey was admittedly an insider. The transfer occurred shortly after a judgment was entered against Mr. Kelsey, when he was insolvent and shortly after he met with his bankruptcy attorney. Immediately prior to filing his bankruptcy petition, Mr. Kelsey cashed out the account and used half the funds to pay the mortgage and pay his attorneys. Then he gave the remaining cash to his wife, thereby consuming all his liquid assets.

Such behavior deviated from the Kelseys' normal course of dealing. Mr. Kelsey testified that the funds in the joint account were saved and used to pay current family living expenses and that there was no division of ownership of funds in the account. Cashing out of the account, payment of legal and mortgage expenses and transfer of the remaining funds to Mrs. Kelsey on the eve of Mr. Kelsey's bankruptcy filing could be construed as calculated and intentional, justifying affirmance of the trial court on alternate § 548(a)(1)(A) grounds.

### V. Conclusion

The Bankruptcy Court did not err in determining that Mr. Kelsey's transfer of cash to Mrs. Kelsey on the eve of his

---

**8.** In her complaint, the Trustee sought avoidance under 11 U.S.C. § 548(a)(1) as having been made with actual intent to hinder, delay, or defraud creditors as well as under 11 U.S.C. § 548(a)(2) as not being supported by reasonably equivalent value. The Bankruptcy Court concluded that Mrs. Kelsey did not provide Mr. Kelsey with reasonably equivalent value and never addressed the issue of actual intent to hinder, delay, or defraud creditors. Nonetheless, avoidance under 11 U.S.C. § 548(a)(1) is also supported by the record.

bankruptcy filing was avoidable as a fraudulent transfer under 11 U.S.C. § 548. We therefore AFFIRM the Bankruptcy Court's Judgment in favor of the Trustee and against Mrs. Kelsey.