**In re Lowell D. BAKER and DonaBeth Baker, Debtors.**

**Randy L. Royal, Chapter 7 Trustee for the Estate of Lowell D. Baker and DonaBeth Baker, Plaintiff,**

v.

**Lowell D. Baker and DonaBeth Baker, Defendants.**

**Bankruptcy No. 01–20281.
Adversary No. 01–2052.**

United States Bankruptcy Court,
D. Wyoming.

Jan. 31, 2002.

Ronald P. Jurovich, Thermopolis, WY, for plaintiff.

Thomas C. Bancroft, Worland, WY, for defendants.

## *DECISION ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT*

PETER J. MCNIFF, Bankruptcy Judge.

On December 20, 2001, this case came before the court for hearing on the motion of the plaintiff, Randy Royal, for summary judgment on all claims stated in his complaint. The defendants, Lowell D. Baker and DonaBeth Baker, oppose the motion. The court has considered the pleadings of record, the arguments of the parties, and the applicable law, and is prepared to rule.

### *Jurisdiction*

The court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding within the definition of 28 U.S.C. § 157(b)(2)(H). The motion is brought under Fed.R.Civ.P. 56, made applicable in adversary proceedings by Fed. R. Bankr.P. 7056.

### *Findings of Fact*

The following facts are basically undisputed. The defendants dispute the conclusions drawn by the plaintiff from the facts.

Lowell and DonaBeth Baker filed a voluntary chapter 7 petition for relief in the underlying bankruptcy case on March 7, 2001. The plaintiff, Randy Royal, is the chapter 7 trustee of the Bakers' estate.

*Balance Sheet:* The Bakers are the borrowers on a promissory note to the Big Horn Federal Savings Bank (Big Horn Federal) dated March 6, 1998, in the principal amount of $155,000. One day after Bakers filed their voluntary chapter 7 peti-

tion in the underlying bankruptcy case, an auction sale was conducted of Bakers' farm equipment, most of it collateral on the Big Horn Federal note. After application of the sale proceeds, the prepetition note balance, including interest, is $11,220.64.

Bakers are also guarantors of debts owed to Big Horn Federal by their son and daughter-in-law, Daniel and Shannon Baker (Daniel and Shannon). The Daniel and Shannon notes are secured by the debtors' farm and other farm collateral owned by Daniel and Shannon. The Daniel and Shannon notes date back to 1992, with the most recent deferral agreements dated June 30, 1999. Bakers also guaranteed a September 23, 1997 promissory note given to Big Horn Federal by George Basham. The balance on the Daniel and Shannon notes in March 2001 exceeded $900,000. The value of the collateral securing the notes is estimated by Big Horn Federal to be $555,803.67.

The figures on Bakers' schedule D show the Big Horn Federal notes are under-collateralized, with a deficiency of approximately $300,000. The plaintiff provided a balance sheet prepared by Big Horn Federal showing Bakers' financial circumstances on June 13, 2000, August 22, 2000 and March 2, 2001 (the dates of the transfers in question). The balance sheet includes exempt assets, takes into account collateral owned by Daniel and Shannon, and values the Bakers' real estate at $530,000. Bakers' liabilities exceeded their assets on each of the stated dates.

Bakers have not refuted the balance sheet evidence. They both admit they were aware of Daniel and Shannon's financial difficulties by 1999. In early 2000, Bakers consulted counsel regarding their financial problems.

*Transfers:* On January 16, 1997, Dona-Beth Baker purchased an annuity contract, Hartford Life Putnam Capital Manager V–

Contract No. 710051085 (Hartford Annuity). The initial payment on the contract was $10,009.21. On January 27, 2000, Bakers received a dividend check of $6,190.59 from the Powell Bean Growers Association. From these patronage account funds, the Bakers made a $6,000 payment on February 7, 2000 to the Hartford Annuity. They also made a $1,000 payment on June 13, 2000.

On March 1, 2001, Bakers sold a rental house located in Powell, Wyoming for $55,400. The property was not encumbered. Bakers made a $51,790 payment to the Hartford Annuity on March 2, 2001 from the sale proceeds.

In August 2000, Bakers received $50,000 from Tim Latham to retire an installment land contract on real property owned by them, under which Mr. Latham was the purchaser. Neither the real property nor the installment contract was encumbered. On August 22, 2000, Bakers used the $50,000 to purchase another annuity contract, Anchor National Life Insurance Polaris II–Contract No. P37A0409075 (Anchor Annuity).

Bakers characterize the annuity contracts as investments. Neither the installment land contract, the rental unit, nor the bean growers' patronage account was exempt from the Bakers' creditors at the time those properties were liquidated.

### Conclusions of Law

Summary judgment is appropriate when there is no disputed issue of material fact and the moving party is entitled to judgment as a matter of law. *In re Baum,* 22 F.3d 1014, 1016 (10th Cir.1994). Under Rule 56(c), summary judgment is proper only if the evidence, reviewed in the light most favorable to the party opposing the motion, demonstrates no genuine issue of any material fact. *Frandsen v. Westing-*

*house Corp.,* 46 F.3d 975, 976 (10th Cir. 1995).

A material fact is one that could affect the outcome of the suit, and a genuine issue is one where the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Farthing v. City of Shawnee, Kan.,* 39 F.3d 1131, 1134 (10th Cir.1994). The court views the evidence in the light most favorable to the non-moving party, but that party cannot rest on the mere allegations in its pleadings and must come forward with evidence to raise a genuine issue. *Id.*

The trustee's complaint states three claims for relief: to recover alleged fraudulent conveyances under 11 U.S.C. § 544 and the Uniform Fraudulent Conveyance Act (UFCA); to recover alleged fraudulent conveyances under 11 U.S.C. § 548; and an objection to Bakers' claims of exemption in the Hartford Annuity and the Anchor Annuity.

Bakers' defenses are: they received adequate consideration in return for funding the annuity contracts; they were acting on the advice of counsel when they liquidated assets and funded the annuity contracts, precluding a finding of actual fraud; and prepetition exemption and bankruptcy planning is permissible rather than fraudulent They also point out that fraudulent intent is a question of fact requiring a trial on the merits. Bakers provided no evidence in support of their response.

### Section 544

Under § 544(b), the trustee is given the power to "avoid any transfer of an interest of the debtor in property ... that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of [title 11]." The applicable law is the Wyoming Uniform Fraudulent Conveyance Act, found at Wyo. Stat. Ann. §§ 34–14–101 through 34–14–113 (LexisNexis 2001).

The plaintiff/trustee contends Bakers did not receive fair consideration for the transfers to the annuity contracts. The UFCA provides: "[e]very conveyance made ... by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made ... without a fair consideration." Wyo. Stat. Ann. § 34–14–105. Under § 34–14–110, a creditor with a matured claim has standing to set aside a fraudulent conveyance under the UFCA. Big Horn Federal is such a creditor, and the trustee steps into its shoes under § 544.

■ The trustee has the burden of proof to show the elements of the claim. The burden for constructive fraud may be by clear and convincing evidence, as it is for actual fraud. *Thomasi v. Koch,* 660 P.2d 806, 811 (Wyo.1983). A debtor's actual intent is irrelevant to a constructive fraud claim. Wyo. Stat. Ann. § 34–14–105.

■ *Conveyance:* First, Bakers seem to argue that a conveyance or transfer did not occur in this case because they merely changed the form of their own assets. A conveyance under the UFCA includes "every payment of money, assignment, release, transfer, lease, mortgage or pledge of tangible or intangible property[.]" Wyo. Stat. Ann. § 34–14–102(a)(ii). The definition is broad.

The New Jersey Supreme Court recently discussed the application of the Uniform Fraudulent Transfer Act to a factually similar case. *Gilchinsky v. National Westminster Bank N.J.,* 159 N.J. 463, 732 A.2d 482 (1999). That court ruled the relevant inquiry is whether the debtor has put some asset beyond the reach of creditors which would have been available to them but for the conveyance. *Id.* at 488. The court concluded a transfer occurs

when a debtor retains title and conveys nonexempt property into exempt property, and that a debtor/transferor is an "insider" under such circumstances. *Id.* at 490.

A similar determination was reached by the Eleventh Circuit Court of Appeals in the case of *In re Levine*, 134 F.3d 1046 (11th Cir.1998). Applying Florida law which defined a transfer somewhat differently but as broadly as Wyoming's law, the *Levine* court held that a transfer occurred when the debtor used nonexempt cash to purchase exempt annuity contracts. The investment characteristics of an annuity contract were persuasive to the *Levine* court because the debtor essentially lost control over the asset and became bound by the terms of the annuity contract. *Id.* at 1050.

In this case, Bakers also turned nonexempt cash into "investments," subject to the contractual provisions of the annuities. The form of ownership and the nature of the assets were altered. The court concludes a conveyance occurred within the meaning of the UFCA.

*Insolvency:* The plaintiff/trustee must prove Bakers were insolvent at the time of, or as a result of, each conveyance. A transferor's insolvency is determined by a balance sheet test, i.e., "when the present fair salable value of his assets is less than the amount that will be required to pay his probable liability on his existing debts as they become absolute and matured." Wyo. Stat. Ann. § 34–14–103(a).

The trustee submitted a balance sheet prepared by Big Horn Federal to establish that Bakers were insolvent when they liquidated the bean contracts, the rental house, and the contract for deed, and were insolvent on the date they filed their chapter 7 bankruptcy case. There are no calculations as of February 7, 2000, the date of the $6,000 conveyance into the Hartford Annuity. Regardless, Bakers did not re-

fute the evidence or the conclusion that they were insolvent at all relevant times. The court concludes the trustee has met his burden of proof on this issue.

■■ *Fair Consideration:* Next, Bakers argue the annuity investments and their streams of payment, although difficult to value precisely, are *reasonably* equivalent in value to the cash funds. Fair consideration is given for property "when in exchange for such property ... as a fair equivalent therefore, and in good faith, property is conveyed or an antecedent debt is satisfied." Wyo. Stat. Ann. § 34–14–104(a). Bakers' analysis fails because fair consideration is determined from the standpoint of the creditors. *Montana Ass'n of Credit Management v. Hergert,* 181 Mont. 442, 593 P.2d 1059, 1064 (1979). The test applied by the *Hergert* court is whether or not the conveyance renders the debtor execution proof. *Id.*

A similar ruling was made by the United States District Court in a case decided under Michigan law, *Craft v. United States,* 65 F.Supp.2d 651, 658–659 (W.D.Mich.1999). That court held: without regard to fraudulent intent, a debtor cannot enhance entireties property at the expense of his creditors, because such action constitutes fraud in law under Michigan's Fraudulent Conveyance Act. *See, also, Gilchinsky v. National Westminster Bank N.J.,* 732 A.2d at 488 (effect on creditors is the relevant inquiry).

Here, Bakers took all of their available unencumbered assets, reduced them to cash and purchased annuity contracts claimed as exempt. From the perspective of their creditors, Bakers received no consideration in return. The court concludes the transfers made on February 7, 2000, June 13, 2000, August 22, 2000, and March 2, 2001 were fraudulent in law and are avoidable under the UFCA.

## Exemptions

■ The debtors' defenses to the complaint are tied to the permissibility of exemption planning. Therefore, even though the transfers are avoidable under the UFCA, the court deems it necessary to address the exemption question, a separate issue of Wyoming law.

For exemption purposes under the Bankruptcy Code, Wyoming is an "opt out" state. 11 U.S.C. § 522(b)(2)(A); Wyo. Stat. Ann § 1–20–109 (LexisNexis 2001). Bakers claim the annuity contracts exempt from execution and the bankruptcy estate pursuant to Wyo. Stat. Ann. § 26–15–132(a)(i) (LexisNexis 2001)which provides:

> The benefits, privileges and options which under any annuity contract issued are due or prospectively due the annuitant, are not subject to execution nor is the annuitant compelled to exercise any such rights, powers or options. Creditors are not allowed to interfere with or terminate the contract, except:
>
> (i) As to amounts paid for or as premium on the annuity *with intent to defraud creditors,* with interest thereon . . . (emphasis provided).

The validity of the exemptions is determined in accordance with Wyoming law. ■ The exemption statute does not collaborate on what constitutes "intent to defraud creditors." Nor is there any Wyoming case law interpreting that provision of the statute. In other states, courts have incorporated fraudulent conveyance law into similar exemption statutes in order to provide a framework for the analysis. *Dona Ana Sav. and Loan Ass'n v. Dofflemeyer,* 115 N.M. 590, 855 P.2d 1054 (1993); *In re Tveten,* 402 N.W.2d 551 (Minn.1987). In the court's view, the UFCA is relevant to the determination of whether the annuity contracts were purchased with intent to defraud creditors.

■ Under the UFCA, actual fraud and fraudulent intent may be shown by circumstantial evidence, because direct evidence of fraud is generally unavailable. *In re Estate of Reed,* 566 P.2d 587, 591 (Wyo. 1977). The indicia of fraud set forth in the *Reed* case include: a transfer of property without consideration in the face of litigation; the timing of the transfer in relation to creditor action; and the relationship of the transferee to the transferor (insider transactions). *Id.* at 590. Other indicia include: whether the debtor retained possession or control of the property after the transfer; a transfer of substantially all of the debtor's assets; insolvency at the time of the transfer; the proximity in time to the incurrence of substantial debt; concealment of the transfer; pending or threatened litigation at the time of the transfer; and financial difficulties. *In re Kelsey,* 270 B.R. 776, 782 (10th Cir. BAP 2001); *see, also, Craft v. United States,* 65 F.Supp.2d at 657. Transfers to family members are subjected to particularly close scrutiny and, along with other circumstances, often provide compelling evidence of fraud. *Id.*

In this case, the undisputed facts satisfy many of the badges of fraud. When Bakers became aware of Daniel's and Shannon's financial problems and their own subsequent risk, they consulted counsel, liquidated unencumbered assets and funded the exempt annuities. The transfers were without consideration from the perspective of the creditors and were made to insiders, the debtors themselves. The debtors transferred all of their unencumbered assets to execution proof investments, while retaining control over the property. The bankruptcy filing occurred shortly thereafter.

Despite these facts, the debtors argue there was no intent to defraud their credi-

tors because they did not conceal the transactions, and they acted on the advice of counsel. The transfers in this case from cash to exempt annuities were made by Bakers in order that their creditors, particularly Big Horn Federal, would be unable to recover on their unsecured claims from unencumbered assets. Acting on the advice of counsel can be interpreted to show Bakers knew precisely what they were doing, rather than negating fraudulent intent.

The evidence is sufficient to establish that the payments into the annuities were made as a result of actual fraud, and as such those portions of the annuities are not exempt. Acting on the advice of counsel and open disclosing of the transactions are but two factors and are insufficient evidence to overcome the weight of the other indicia of fraud in this case.

Bakers also refer to the legislative history of the Bankruptcy Code and state an oft-repeated premise, that the conversion of nonexempt assets to exempt assets for the purpose of placing the assets outside the reach of creditors is not, without more, a fraudulent transfer. In the case of *In re Carey*, 938 F.2d 1073 (10th Cir.1991), the Tenth Circuit Court of Appeals discussed a conveyance of nonexempt to exempt assets in the context of a § 727 objection to discharge and ruled that the "without more" language requires proof of actual fraud. Actual fraud may be shown by the usual evidence of specific indicia, set forth in the *Carey* decision, and discussed infra. *Id.* at 1077.

Even if exemption planning is permissible under federal bankruptcy law, the exemptions in this case are claimed under a statute which specifically invalidates an exemption claim in the presence of actual fraud. The court does not believe that generalized statements in the legislative history of the Bankruptcy Code were in-

tended to, or can, override specific provisions of Wyoming exemption law in an "opt out" state.

■ There may be circumstances where the purchase of exempt property from nonexempt assets is permissible exemption planning and not, in and of itself, fraudulent as to a debtor's creditors. For example, payments which increase the value of a homestead exemption may be an exception to the court's holding today. But when a debtor shields virtually all of his valuable assets from a specific creditor while insolvent, and shortly after files a chapter 7 bankruptcy case, reasonable assumptions can may be made. That conduct is not permissible exemption planning.

■ Other grounds exist to avoid the transfer as well. Under the UFCA, actions taken to hinder or delay creditors are also grounds for avoidance of a conveyance. Wyo. Stat. Ann. § 34–14–108; *In re Estate of Reed,* 566 P.2d at 590. Bakers deliberately funded the annuity contracts and then filed the bankruptcy case in order to prevent their creditors from obtaining unencumbered assets to satisfy claims. They don't deny this. The action was taken to hinder creditors and establishes a claim under Wyo. Stat. Ann. § 34–14–108 without regard to fraudulent intent.

To the extent of the payments made to the Hartford Annuity on February 7, 2000, June 13, 2000, and March 1, 2001, the Hartford Annuity is not exempt, and the trustee's objection is sustained. The exemption claimed in the Anchor Annuity is overruled in its entirety. The court will enter a judgment in the plaintiff's favor on the motion for summary judgment.