**In re Patricia G. CAREY, Debtor.**

**MARINE MIDLAND BUSINESS LOANS, INC., Appellant,**

v.

**Patricia G. CAREY, Appellee.**

**No. 89–6417.**

United States Court of Appeals, Tenth Circuit.

July 5, 1991.

John J. Hurley of Phillips, Lytle, Hitchcock, Blaine & Huber, Buffalo, N.Y. (Timothy M. Rastello, Holland & Hart, Denver, Colo., with him on the briefs), for appellant.

David Pomeroy (Terry Stokes also of Fuller, Tubb & Pomeroy, Oklahoma City, Okl., and Bobbie T. Shell, Baker & Botts, Houston, Tex., with him on the briefs), for appellee.

Before McKAY, McWILLIAMS and LOGAN, Circuit Judges.

LOGAN, Circuit Judge.

Patricia G. Carey filed a voluntary petition in bankruptcy pursuant to Chapter 7 of the Bankruptcy Code. Marine Midland Business Loans, Inc. (Marine Midland) filed objections to her discharge and her home-

stead exemption claim. The bankruptcy court granted Carey's discharge and the district court affirmed. Marine Midland appeals this decision. The appeal presents questions of what prebankruptcy financial activity is permissible to take advantage of a statutory homestead exemption.

## I

Carey's financial troubles stemmed from her involvement in her husband's business, the Carey Lumber Company. Carey, a stockbroker and former officer and director of Carey Lumber, executed a series of personal guarantees in 1984 to cover Carey Lumber's indebtedness. One of those guarantees, originally made to Commercial Credit Business Loans, Inc., was assigned to Marine Midland in January 1986.

Carey Lumber began to experience cash flow shortages in late 1985. In an effort to save the company, Carey liquidated her personal stock portfolio for $85,000 and loaned the proceeds to Carey Lumber. The Careys loaned additional funds to the company by mortgaging their home and liquidating other assets. Despite the influx of nearly $300,000, Carey Lumber found it necessary to file a voluntary petition under Chapter 11 of the Bankruptcy Code on October 20, 1986.

Marine Midland commenced an action against Carey's husband for alleged fraud and conversion arising from his operation of Carey Lumber.[1] Marine Midland also began foreclosure proceedings on the company's assets. After liquidation, Marine Midland was left with a deficiency in excess of $2,000,000. Marine Midland then entered into discussions with Carey and her husband regarding their personal guarantees. After eleven months of unsuccessful negotiations, Marine Midland filed actions against the Careys to recover on the guarantees.

Carey filed her bankruptcy petition on April 20, 1988. Marine Midland filed an "Objection to Claim of Exemption" and a "Complaint Objecting to Debtor's Discharge" in bankruptcy court, alleging that Carey's homestead exemption should be denied and that she should be denied discharge because she fraudulently liquidated her nonexempt assets to reduce the mortgage on her homestead. Marine Midland cited the following acts as evidence of Carey's fraudulent intent:

1. In September 1986, Carey and her husband refinanced their homestead by signing a mortgage note calling for a three-year payment period with no prepayment penalty.

2. On October 14, 1986, just six days before Carey Lumber filed for bankruptcy, Carey received a $27,200 payment from Carey Lumber.

3. In December 1986, Carey granted her father a mortgage on a fourplex for a six-year antecedent debt. In March 1988, Carey deeded the property to her father in lieu of foreclosure.

4. On June 19, 1987, Carey became sole owner of their residence (formerly held in joint tenancy) by deed from her husband for no consideration.

5. On December 12, 1987, Carey transferred her stock in Carey Properties, Inc. to Carey, Inc., a corporation controlled by her husband, for $500. Carey Properties is a real estate management company.

6. On December 17, 1987, the Careys transferred their interest in a "vacation real estate" partnership to the other general partners. The Careys have continued to use the property, however, through payments to the partnership.

7. From May 1985 to April 1987, Carey liquidated essentially all her remaining nonexempt assets to pay down the mort-

---

**1.** Marine Midland's evidence consisted of Carey Lumber's withholding $199,000 of accounts it had collected just before filing its petition and its falsification of reports of new shipments and inventory purchases in order to obtain credit advances. Marine Midland alleges that some of the withheld funds were used to pay a portion of the $85,000 Carey loaned to the company and to reduce debts owed to two other creditors whose loans the Careys had guaranteed. Carey's husband filed a confession of judgment in the fraud action on June 1, 1989. *See* Brief of Appellant, Ex. D. We deny Carey's motion to strike Marine Midland's references to this confession of judgment which is of record in a court proceeding.

gage on her homestead. This included jewelry and two cars ($22,800), a one-half interest in the assets of Carey Equipment Company ($16,226.48), an interest in a Colorado time-share condominium development ($34,300), and all available earned income and tax refunds.[2]

*See In re Carey*, 96 B.R. 336, 338 (Bankr. W.D.Okla.1989); Brief of Appellant at 13–15, 31.

The bankruptcy court granted judgment in favor of Carey, but restricted her homestead exemption to one-quarter of an acre of land, as provided in Okla.Stat.Ann., tit. 31, § 2. *See In re Carey*, 96 B.R. at 341. The district court affirmed. Marine Midland then filed this timely appeal.

## II

A debtor filing a Chapter 7 bankruptcy petition may exempt certain property from the estate available to creditors. Under 11 U.S.C. § 522(b), a debtor may choose the exemptions provided by applicable state law. Carey claimed Oklahoma's state law homestead exemption:

"Except as otherwise provided in this title ..., the following property shall be reserved to every person residing in the state, exempt from attachment or execution and every other species of forced sale for the payment of debts, except as herein provided:

1. The home of such person, provided that such home is the principal residence of such person;

2. A manufactured home, provided that such manufactured home is the principal residence of such person;"

Okla.Stat.Ann. tit. 31, § 1, subd. A, pars. 1–2. This election left Carey, after dis-

charge, with a $300,000 home encumbered by a $30,000 mortgage. Marine Midland objects, contending that Carey fraudulently liquidated nonexempt assets to increase her "protected" home equity. It argues that this conduct warrants denial of both Carey's homestead exemption and the discharge of her debts.

We start with the premise that "the conversion of non-exempt to exempt property for the purpose of placing the property out of the reach of creditors, without more, will not deprive the debtor of the exemption to which he otherwise would be entitled." *Norwest Bank Neb., N.A. v. Tveten*, 848 F.2d 871, 873–74 (8th Cir.1988). *Accord In re Bowyer*, 916 F.2d 1056, 1059 (5th Cir.1990); *Ford v. Poston*, 773 F.2d 52, 54 (4th Cir.1985). Indeed, both the House and the Senate reports accompanying the Bankruptcy Reform Act of 1978 explain that:

"As under current law, the debtor will be permitted to convert nonexempt property into exempt property before filing a bankruptcy petition. The practice is not fraudulent as to creditors, and permits the debtor to make full use of the exemptions to which he is entitled under the law."

H.R.Rep. No. 595, 95th Cong., 1st Sess. 361 (1977), *reprinted in* 1978 U.S.Code Cong. & Admin.News 5963, 6317; S.Rep. No. 989, 95th Cong., 2d Sess. 76 (1978), *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5862. Congressional approval of such conversion is not absolute, however. Debtors may be denied discharge if they converted property "with intent to hinder, delay, or defraud a creditor ... within one year before the date of the filing of the petition." 11 U.S.C. § 727(a)(2).[3]

---

**2.** Marine Midland also asserts that the confession of judgment by Carey's husband is evidence of fraud on the part of Carey. The record contains no evidence that Carey was connected to any fraudulent conduct on the part of her husband or Carey Lumber. We hold, therefore, that the judgment against Carey's husband is not relevant to Marine Midland's claims against Carey.

**3.** Section 727(a)(2) states, in pertinent part:
"(a) The court shall grant the debtor a discharge, unless—

. . . .

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—

(A) property of the debtor, within one year before the date of the filing of the petition;
. . ."

■ To deny a discharge under § 727(a)(2), a court must find *actual* intent to defraud creditors. *See Bowyer*, 916 F.2d at 1059; *In re Smiley*, 864 F.2d 562, 566 (7th Cir.1989). "[T]he desire to convert assets into exempt forms by itself" does not constitute actual intent to defraud, *see In re Johnson*, 880 F.2d 78, 81 (8th Cir. 1989); "extrinsic evidence of fraudulent intent is required to establish fraud." *Id. See also Smiley*, 864 F.2d at 566; *Ford*, 773 F.2d at 55; *In re Aldman*, 541 F.2d 999, 1004–05 (2d Cir.1976). *Cf. Farmers Coop. Ass'n v. Strunk*, 671 F.2d 391, 395 (10th Cir.1982) (fraudulent intent to conceal assets "may be established by circumstantial evidence, or by inferences drawn from a course of conduct").

■ To infer fraudulent intent, courts look for specific indicia of fraud. Actions from which fraudulent intent may be inferred include situations in which a debtor conceals prebankruptcy conversions, *see In re Smiley*, 864 F.2d at 569; *McCormick v. Security State Bank*, 822 F.2d 806, 808 (8th Cir.1988); *cf. In re Waddle*, 29 B.R. 100, 103 (Bankr.W.D.Ky.1983) (full disclosure of transactions to creditors negates a finding of fraud); converts assets immediately before the filing of the bankruptcy petition, *In re Reed*, 700 F.2d 986, 989 (5th Cir.1983); *In re Mueller*, 867 F.2d 568, 569–70 (10th Cir.1989); gratuitously transfers property, *In re Butler*, 38 B.R. 884, 888 (Bankr.D.Kan.1984); *In re Loeber*, 12 B.R. 669, 675 (Bankr.D.N.J.1981); continues to use transferred property, *In re Cadarette*, 601 F.2d 648, 651 (2d Cir.1979); *In re Elholm*, 80 B.R. 964, 970 (Bankr.D. Minn.1987); and transfers property to family members, *see In re Wojtala*, 113 B.R. 332, 337–38 (Bankr.E.D.Mich.1990); *In re Loeber*, 12 B.R. at 675. Courts also consider the monetary value of the assets converted in determining whether the debtor acted with fraudulent intent. *See Tveten*, 848 F.2d at 876.[4] The cases, however, are peculiarly fact specific, and the activity in each situation must be viewed individually.

In the instant case, the bankruptcy and district courts found that Carey's prebankruptcy actions were not fraudulent. After careful review, we hold that this finding is not clearly erroneous. *See In re Bowyer*, 916 F.2d at 1059 ("the bankruptcy court's finding, affirmed by the district court," will not be reversed unless clearly erroneous). Although there is substantial evidence in the record of prebankruptcy planning to pay down Carey's mortgage with non-exempt assets, we must accept that actions to "hinder, delay or defraud a creditor" within 11 U.S.C. § 727(a)(2) require something more than that, and we do not find enough to hold that the bankruptcy and district courts erred.

■ Here Carey liquidated her stock portfolio, loaning the proceeds to Carey Lumber, and consented to mortgaging her exempt homestead to aid her husband's business—all at a time not long before some of the actions of which Marine Midland complains. Carey's negotiating a mortgage to permit prepayment of principal without penalty does not infer any fraud on creditors; especially since the prior mortgage note had a one-year due date, and apparently had no prepayment penalty clause. The bankruptcy court found that Carey had no equity in either the fourplex she transferred to her father or the vacation real estate transferred to the other partners. It found that Carey did not benefit from her husband's transfer of his interest in their joint tenancy-held homestead; that interest apparently would have been protected, even from the husband's creditors, had the transfer not occurred. *See In re Carey*, 96 B.R. at 338 and n. 4. As for Carey Lumber's loan repayment to Carey six days before it filed for bankruptcy, the fact that the trustee in Carey Lumber's bankruptcy apparently made no effort to set aside the payments indicates the

---

**4.** Other indicia of fraud include:
"(1) that the debtor obtained credit in order to purchase exempt property; (2) that the conversion occurred after entry of a large judgment against the debtor; (3) that the debtor had engaged in a pattern of sharp dealing prior to bankruptcy; ... and [ (4) ] that the conversion rendered the debtor insolvent."
4 *Collier on Bankruptcy* ¶ 727.02[3], at 20 (15th ed.1991) (footnotes omitted).

transfer was not fraudulent or a preference.

 Carey's other activities do not bespeak of fraudulent intent. The transfer of stock in Carey Properties, Inc. was for only $500, apparently its net worth to Carey; and the assets in that corporation presumably would be available to her husband's creditors. The liquidation of the other assets used to pay down the home mortgage occurred over a two year period and was in the open; the activity and payment appears to be consistent with what has been approved by Congress to take advantage of exemptions. Carey fully disclosed all payments and transfers in her bankruptcy schedules and at the meeting of creditors. Carey retained no beneficial interest in any converted property. She did not obtain credit to purchase exempt property. Under these circumstances, we cannot say that the district and bankruptcy courts erred in finding she did not intend to "hinder, delay, or defraud" her creditors or acted improperly in relation to her homestead.

Accordingly, we AFFIRM the bankruptcy and district courts' ruling that Carey was entitled to the homestead exemption provided under Oklahoma law and to a discharge of her debts.