**In re Leo H. FIESER, Jr., Debtor.**

**C. David Butler, United States Trustee, Plaintiff,**

v.

**Leo H. Fieser, Jr., Defendant.**

**Bankruptcy No. 97–8528–8G7. Adversary No. 97–872.**

United States Bankruptcy Court, M.D. Florida, Tampa Division.

April 16, 1999.

Benjamin E. Lambers, U.S. Trustee, Tampa, FL, for plaintiff.

M. Jay Lancer, Sarasota, FL, for defendant.

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND MEMORANDUM OPINION

PAUL M. GLENN, Bankruptcy Judge.

**THIS CASE** came before the Court for a final evidentiary hearing on a Complaint Objecting to Discharge filed by the United States Trustee. In the complaint, the U.S. Trustee objects to the entry of a discharge of the Debtor, Leo H. Fieser, Jr., pursuant to 11 U.S.C. § 727(a)(2)(A). The Debtor answered the Complaint and denied the material allegations.

### Background

In September, 1996, the Debtor obtained cash advances in the approximate amount of $148,000 from twenty-two different credit card companies, and used the entire cash proceeds to satisfy the mortgage encumbering his homestead. At the time,

the Debtor was employed by the United States Postal Service and had an excellent credit history. The Debtor testified that at the time of his actions to obtain the cash advances from his credit cards, he was concerned that he might have cancer. In addition, the Debtor testified that he had two prior heart attacks and cardiac surgeries, in 1985 and 1994. The Debtor testified that he realized that when he obtained cash advances from the credit cards in a certain amount, he was entitled to obtain credit life insurance in an equal amount without a physical examination or health questions. The Debtor contended that his actions in procuring cash proceeds from his credit cards, purchasing the credit life insurance, and satisfying his homestead mortgage, were to provide a homestead free and clear of liens for his wife in the event of his death. The Debtor testified that after he had obtained the cash advances and paid the mortgage, he learned that he did not have a life-threatening illness.

The Debtor also testified that when he obtained the cash advances, he was the subject of an internal investigation by his employer. The investigation resulted in disciplinary action against the Debtor which caused the loss of some pay. The Debtor testified that subsequently, as a result of a union grievance, the disciplinary action was overturned and the Debtor received all back pay.

In March, 1997, the Debtor retired from the Postal Service, at age 63, and remains unemployed.

In May, 1997, the Debtor filed this Chapter 7 case. At the time of filing his bankruptcy petition, the Debtor had no material assets other than his homestead, which was then free and clear of any liens. The Chapter 7 trustee has filed a Report of No Distribution.

## Discussion

The U.S. Trustee requests that the Court deny the Debtor's discharge pursuant to § 727(a)(2)(A) of the Bankruptcy Code, which provides:

**11 U.S.C. § 727. Discharge**

(a) The court shall grant the debtor a discharge, unless—

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred . . .

(A) property of the debtor, within one year before the date of the filing of the petition . . .

■ To prevail in this objection to discharge, the plaintiff must prove four elements: (1) that a transfer occurred; (2) that the property transferred was the property of the Debtor; (3) that the transfer was made within one year of the date of the filing of the petition; and (4) the Debtor had the intent at the time of the transfer to hinder, delay, or defraud a creditor. *See In re Ingersoll,* 106 B.R. 287, 292 (Bankr.M.D.Fla.1989), *aff'd* 124 B.R. 116 (M.D.Fla.1991), and *Marine Midland Bank v. Mollon,* 160 B.R. 860, 864 (M.D.Fla.1993).

The Debtor acknowledges that the payments of cash which he made to the mortgagee to pay the debt secured by his homestead were transfers of his property and occurred within one year of the filing of the petition. The sole issue is whether the Debtor had the intent to hinder, delay, or defraud a creditor.

■ At the trial on the U.S. Trustee's complaint, the objector Trustee has the burden of proving the objection. Fed. R.Bankr.P. 4005. The objection must be proven by a preponderance of the evidence. *See Farouki v. Emirates Bank International, Ltd.,* 14 F.3d 244 (4th Cir. 1994); *In re Beaubouef,* 966 F.2d 174 (5th Cir.1992); *In re Adams,* 31 F.3d 389 (6th Cir.1994), *cert. denied,* 513 U.S. 1111, 115 S.Ct. 903, 130 L.Ed.2d 786 (1995); *In re Serafini,* 938 F.2d 1156 (10th Cir.1991). *Cf. Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

Intent must be actual intent, not constructive, but may be ascertained from the totality of the circumstances. *Mahon v. Milam*, 172 B.R. 371, 374 (Bankr. M.D.Fla.1994), citing *Future Time, Inc. v. Yates*, 26 B.R. 1006 (Bankr.M.D.Ga.1983), *aff'd* 712 F.2d 1417 (11th Cir.1983). *See also In re Groff*, 216 B.R. 883 (Bankr. M.D.Fla.1998). A creditor, or the U.S. Trustee in this instance, is not required to elicit an actual admission of intent from the debtor. *See, Ingersoll, supra.* The determination of the Debtor's intent in this matter is analyzed in the context of both his testimony and his actions.

There are many explanations of motivation or intent from debtors as to their pre-petition actions in cases objecting to discharge. Such motivations to account for transfers of assets range from taking care of spouses or ex-spouses financially (*See In re Gipe*, 157 B.R. 171 (Bankr.M.D.Fla. 1993)), to gambling and spending for other nonrecoverable expenses (*See In re Reed*, 700 F.2d 986, 993 (5th Cir.1983)).

In this case, the Court concludes that the Debtor never intended to repay the credit card debts in full, and that he transferred the funds to satisfy his mortgage with an intent to defraud the credit card issuers.

Evidence in this case includes the Debtor's unrefuted actions in obtaining cash advances from twenty-two credit cards and using that cash to satisfy the mortgage on his exempt homestead. From the testimony, the Court concludes that the Debtor had general knowledge that credit card debts were dischargeable in bankruptcy and that his homestead was exempt. At the time he obtained the cash advances and paid his mortgage, the Debtor was the subject of a disciplinary investigation at his employment. The Debtor retired six months after obtaining the cash advances and paying the mortgage. The Debtor filed the voluntary Chapter 7 petition eight months after obtaining the cash advances and paying the mortgage.

While the Debtor also may have been concerned that he had a terminal illness, the credit life insurance was only one method of payment. The Debtor later learned that he was not terminally ill, and yet did not make arrangements to repay the debt. Rather, he filed the Chapter 7 case and sought to discharge the debt. The Court concludes that the Debtor never intended to pay the credit card debts in full from anything other than · possible credit life insurance proceeds. The totality of circumstances reveals Debtor's intention to hinder, delay, or defraud his creditors at the time of his actions.

Several cases cited by the Debtor in his post-trial memorandum stand for the proposition that "exemption planning" allows a debtor to convert non-exempt assets to exempt assets in the year prior to filing a bankruptcy petition, without losing his discharge. Several cases stand for the proposition that pre-bankruptcy planning is permissible. *See In re Barrett*, 156 B.R. 529 (N.D.Tex.1993) and *In re Carey*, 938 F.2d 1073 (10th Cir.1991). However, in such cases, the debtors were converting their currently owned non-exempt property into exempt property. In fact, the court in *Carey, supra*, distinguished Patricia Carey's actions of transferring non-exempt assets to exempt assets with the statement that "[s]he did not obtain credit to purchase exempt property." (*In re Carey*, 938 F.2d at 1078).

Generally, courts recognize that the conversion of non-exempt assets to exempt assets is not in itself fraud. A court must conclude that such transfer was accomplished with the intent to delay, hinder, or defraud a creditor to justify the denial of the discharge:

> ... In this respect, 11 U.S.C. § 727(a)(2) is absolute: the discharge shall be denied a debtor who has transferred property with intent to defraud his creditors. The legislative history of the exemption section ... does not mean that conversion is never fraudulent as to creditors, but simply that ... mere con-

version is not to be considered fraudulent unless other evidence proves actual intent to defraud creditors. While prebankruptcy conversion of nonexempt into exempt assets is frequently motivated by the intent to put those assets beyond the reach of creditors, which is, after all, the function of an exemption, evidence of actual intent to defraud creditors is required to support a finding sufficient to deny a discharge. For example, evidence that the debtor, on the eve of bankruptcy, borrowed money that was then converted into exempt assets would suffice to support a finding of actual intent to defraud. Only if such a finding is made may a discharge be denied.

*In re Reed,* 700 F.2d 986, 991 (5th Cir. 1983). As described above, in this case the Court finds that the Debtor had an intent to defraud the card issuers.

The Debtor also emphasizes the fact that the U.S. Trustee brought this case against the Debtor and that not one of the twenty-two credit card companies which are owed the debts became involved with this case. However, the statute provides that the U.S. Trustee has the authority to object to a debtor's discharge (11 U.S.C. § 727(c)(1)), even when a creditor may deem it unreasonable to bring an action against a debtor.

## Conclusion

The Court finds that Debtor had the intent to hinder, delay, or defraud his creditors at the time of his actions in obtaining cash advances and satisfying the mortgage on his exempt property, that these actions occurred within one year of filing his bankruptcy petition, and that the Debtor's discharge should be denied pursuant to 11 U.S.C. § 727(a)(2)(A).

The Court will enter a separate Final Judgment in favor of the Plaintiff and against the Debtor, Leo H. Fieser, Jr.