**In re Philip and Wendy BOUDROT, Debtors.**

**Bank of Oklahoma, N.A., Plaintiff,**

**v.**

**Philip and Wendy Boudrot, Defendants.**

**Bankruptcy No. 02–10922–BH.**
**Adversary No. 02–1097–BH.**

United States Bankruptcy Court, W.D. Oklahoma.

Dec. 18, 2002.

John D. Clayman, Frederic Dorwart, Tulsa, OK, for Plaintiff.

Sam George Caporal, Oklahoma City, OK, for Defendants.

## MEMORANDUM OF DECISION AND ORDER GRANTING JUDGMENT FOR THE PLAINTIFF

RICHARD L. BOHANON, Bankruptcy Judge.

Before the Court is the Plaintiff's complaint seeking a denial of the Defendants' discharge pursuant to 11 U.S.C. § 727(a)(2). Having heard evidence at trial and reviewed the briefs submitted by the parties, the Court finds that prior to filing their petition the Defendants transferred non-exempt assets to exempt assets with the intent to hinder, delay or defraud a creditor, the Plaintiff.

### Findings of Fact

The Plaintiff holds a judgment against the Defendants for almost $71,000.[1] Shortly after the judgment was entered against them, the Defendants liquidated all of their non-exempt savings accounts, some $54,000, and used the money to reduce the note secured by a mortgage on their exempt homestead. As the term is defined in the Bankruptcy Code this transaction constituted a transfer of assets.[2]

At the time of the transfer, the Defendants were well aware of the Plaintiff's judgment. Mr. Boudrot also testified that he knew that reducing the note would consume most of their available cash. His testimony was that he felt he and his wife could support themselves from her earnings. However, at that time Mrs. Boudrot was unemployed.

According to Mr. Boudrot, they liquidated their savings accounts to reduce the note because there were rumors at his workplace that the company might be sold and he feared he might be terminated. However, there was no evidence to corroborate this statement and some 12 months later at the time of the trial, Mr. Boudrot was still employed by the same company. This testimony also lacks credibility without any explanation of why a person concerned with unemployment would convert liquid assets to illiquid ones. Logic would compel the contrary conclusion, that the person would keep assets liquid to provide for the necessities of living while seeking other employment.

At trial, the Plaintiff sought an exception to the Defendants' discharge pursuant to § 523(a)(2) as well as denial of discharge pursuant to § 727(a)(2). The Court dismissed the § 523(a)(2) claim[3], but took the § 727(a)(2) claim under submission.

### Discussion

Section 727(a)(2) of the Bankruptcy Code provides that debtors may be denied a discharge if they transferred property "with intent to hinder, delay, or defraud a creditor ... within one year before the date of the filing of the petition." 11 U.S.C. § 727(a)(2). The Court will consider separately whether the Defendants acted with fraudulent intent and whether they acted with intent to hinder or delay their creditors. See Cullinan Assoc., Inc. v.

---

1. The judgment represents awards made by a state court in favor of the Plaintiff for attorney's fees and costs incurred in litigation commenced by the Debtor–Defendants.

2. 11 U.S.C. § 101(54) provides that " 'transfer' means every mode, direct or indirect, absolute or conditional, voluntary or involuntary of disposing of or parting with property, or with an interest in property..."

3. The claim under § 523(a)(2) relates to confusion over an alleged deposit made by Mrs. Boudrot. The findings of facts and conclusions of law were entered on the record on September 11, 2002, and are not relevant here.

*Clements,* 205 B.R. 377, 381 (W.D.Va.1995) (holding that the bankruptcy court committed reversible error when it considered only the debtor's intent to defraud and not intent to hinder or delay).

## I. Intent to Defraud

The essential issue is whether the Defendants transferred their non-exempt property with the requisite intent. The term "pre-bankruptcy planning" has been used to refer to conduct such as the Defendants'. Not surprisingly, "[c]reditors oftentimes view it as fraud." John M. Norwood, *An Historical Analysis of Pre-Bankruptcy Conversion Cases on a Circuit-by-Circuit Basis,* 103 COM. L.J. 154 (Summer 1998).

The divergent views of debtors and creditors on pre-bankruptcy transfers of non-exempt assets highlight the precarious balance between the two sides' competing interests under the Bankruptcy Code. Thus, it comes as no surprise that judicial decisions on the issue vary greatly. *See id.*

The lack of a coherent body of law has resulted in decisions, often within the same circuit, that are difficult to reconcile. *See id* at 155–56, 197–203 (noting that "[c]ases decided by lower courts in the Tenth Circuit have produced mixed results."). One observer aptly put it thus: "Fraud in bankruptcy planning appears to enjoy the same precise definition as pornography— the federal courts know it when they see it." [4] John M. Norwood & Marianne M. Jennings, *Before Declaring Bankruptcy, Move to Florida and Buy a House: the Ethics and Judicial Inconsistencies of Debtors' Conversions and Exemptions,* 28

Sw. U.L. REV. 439, 442 (1999). Despite the variation in judicial decisions, this Court must be guided by the Court of Appeals' decision in *Carey,* and specifically, by the indicia of fraud listed in that decision. *See Marine Midland Bus. Loans, Inc. v. Carey (In re Carey),* 938 F.2d 1073 (10th Cir.1991).

■ The Court of Appeals for the Tenth Circuit explained in *Carey* that a bankruptcy court may deny debtors a discharge only upon finding actual intent to defraud creditors. *See Carey,* 938 F.2d at 1077. The Court of Appeals went on to explain that there must be some extrinsic evidence of fraudulent intent before debtors are denied a discharge. It does not suffice to show merely that the debtors transferred non-exempt assets. *See id.*

■ The question then becomes: how does a bankruptcy court determine whether debtors have acted with intent to defraud? The Court of Appeals provided a list of indicia to aid in this inquiry. That list includes:

- concealment of pre-bankruptcy conversions of property;
- gratuitous transfers of property;
- continued use of the property by the debtors;
- transfers of property to family members;
- obtaining credit to purchase exempt property;
- conversion of non-exempt property to exempt property after entry of a large judgment against the debtors;
- a pattern of sharp dealing before the debtors filed their petition;

---

4. A similar view was expressed by the bankruptcy court for this district. While holding that the debtor would receive her discharge, the bankruptcy court noted that the debtor's conduct came "perilously close to failing the

'smell test.' " *Marine Midland Bus. Loans, Inc. v. Carey (In re Carey),* 96 B.R. 336, 340 (Bankr.W.D.Okla.1989) (Teselle, J.) (quoting *Morgan Fiduciary, Ltd. v. Citizens & S. Int'l Bank,* 95 B.R. 232 (D.Fla.1988)).

586

- the value of the assets converted; and
- the conversion of non-exempt property to exempt property left the debtors insolvent.

*See id.* at 1077 & n. 4. The Plaintiff must prove that the Defendants acted with the requisite intent by a preponderance of evidence. *See First Nat'l Bank of Gordon v. Serafini (In re Serafini),* 938 F.2d 1156, 1157 (10th Cir.1991) (holding that the burden of proof under § 727(a) is the preponderance of the evidence standard).

In *Carey,* as in this case, the defendant-debtor had transferred non-exempt assets and used them to reduce the principal of the note secured by her homestead. The bankruptcy court concluded that she had not acted with the requisite intent, and the Court of Appeals affirmed, noting:

> Although there is substantial evidence in the record of prebankruptcy planning to pay down Carey's mortgage with nonexempt assets, we must accept that actions to "hinder, delay or defraud a creditor" within 11 U.S.C. § 727(a)(2) require something more than that, and we do not find enough to hold that the bankruptcy and district courts erred.

*Carey,* 938 F.2d at 1077.

■ In summary, *Carey* can be said to stand for the proposition that debtors are entitled to plan the use of their exemptions so long as they do not do so with the intent to hinder, delay or defraud creditors. Of course, as recognized by the Court of Appeals in *Carey,* such determinations are fact specific. *See id.*

Relying on the tenets announced in *Carey,* other courts have found the requisite intent to defraud. *See, e.g., Royal v. Baker (In re Baker),* 273 B.R. 892, 899 (Bankr. D.Wyo.2002) (holding that the debtors' purchase of an exempt annuity with the proceeds from the liquidation of substan-

tially all of their non-exempt assets constituted a fraudulent conveyance under state law and using the same indicia of fraud listed in *Carey), and Reese v. Kulwin (In re Kulwin),* 187 B.R. 341, 348–49 (Bankr. D.Kan.1995), *vacated due to settlement agreement and not on substantive grounds,* 208 B.R. 229 (Bankr.D.Kan.1997) (denying the debtor a discharge where there were sufficient indicia of fraud to conclude that the debtor converted almost $174,000 of non-exempt assets to exempt ones).

## II. Intent to Hinder or Delay

■ The Court must also determine whether the Defendants acted with intent to hinder or delay their creditors. "Because § 727(a)(2) is in the disjunctive, it is unnecessary ... to prove fraud so long as they can establish the debtor's intent to hinder or delay." *Cuervo v. Snell (In re Snell),* 240 B.R. 728, 730 (Bankr.S.D.Ohio 1999).

This Court has previously expressed its position that statutes should be interpreted using their plain meaning. *See In re Horwitz,* 167 B.R. 237 (Bankr.W.D.Okla. 1994). The *Oxford English Dictionary* defines "hinder" as "keep back, delay; impede; obstruct; prevent." THE NEW SHORTER OXFORD ENGLISH DICTIONARY, Vol 1 1236 (1993). It defines "delay" as "put off to a later time; postpone, defer." *Id.* at 623.

■ Thus, debtors can be said to act with an intent to hinder their creditors if they intend to impede or obstruct them. They can be said to act with intent to delay if they intend to slow or postpone their creditors. *See Oberst v. Oberst (In re Oberst),* 91 B.R. 97, 101 (Bankr.C.D.Cal. 1988) (holding that the debtor would be denied a discharge where she had transferred her one-half interest in her home "for the purpose of hindering her ex-

spouse from collecting on the judgment."). *See also, In re Snell*, 240 B.R. at 730–31 (denying the debtor's discharge where the debtor admitted one of his purposes in transferring assets was to place those assets beyond the reach of his creditors, even though the debtor claimed to be acting on advice of counsel).

### Conclusions of Law

■ In the present case, the Court finds substantial evidence that the Defendants were motivated by a desire to hinder, delay or defraud the Plaintiff when they transferred their non-exempt assets to pay down the note secured by their exempt homestead. Most strikingly, the Defendants made this transfer just shortly after entry of the state court judgment against them without any credible statement of an intent to engage in bona fide bankruptcy planning. The transfer admittedly left them with little cash.

The Court is unpersuaded by the testimony of Mr. Boudrot that they intended to use Mrs. Boudrot's wages to support themselves. The evidence shows that she was unemployed and had no income. It appears Mrs. Boudrot had apparently terminated her employment in order to prosecute her state action against the Plaintiff. This inconsistency casts a shadow on the credibility of Mr. Boudrot's testimony.

Likewise, the Court finds the Defendants' testimony that they were not motivated by intent to defraud their creditors, but rather were concerned that Mr. Boudrot's job was in imminent jeopardy, unpersuasive and incredible. Their alleged concern for Mr. Boudrot's job was based merely on rumors and is without corroboration. The Court finds it was more than providence that Mr. Boudrot was still employed at the time of trial, almost one year after the conversion. As stated previously it would also seem more likely that someone faced with unemployment would husband his cash rather than transfer it into an illiquid asset.

The Court is also struck by the fact that the Defendants appear to harbor animosity toward the Plaintiff. The Defendants engaged in protracted litigation against the Plaintiff, knew of the judgment against them, and were well aware that the Plaintiff was garnishing Mr. Boudrot's wages to attempt to satisfy its judgment. They chose to transfer all their savings in the amount of almost $54,000 to pay down their note. Obviously, the $54,000 would have gone far to satisfy the Plaintiff's judgment.

Based on observation of the Defendants during testimony and the facts and conclusions outlined above, the Court must find that the Defendants had the actual intent to defraud their creditors, particularly the Plaintiff.[5]

5. The Court's holding here differs with the bankruptcy court's one in *Carey*. *See In re Carey*, 96 B.R. at 340–41. However, in that case, the debtor's husband, who was not a codebtor in his wife's bankruptcy, invoked his 5th Amendment rights when questioned about transactions with the plaintiff-creditor. Consequently, the bankruptcy court in *Carey* determined that, "[N]o evidence directly implicating *Debtor* in such wrongdoing was adduced." *Id.* at 340 (emphasis added). The suggestion is that there was no evidence of wrongdoing against the debtor-wife, although there might be some against her husband.

In the present case, there is evidence of intent to defraud creditors by both Defendants.

The bankruptcy court in *Carey* also noted that, "What augurs well for the Debtor in this case is that all transactions were fully disclosed in the bankruptcy schedules and at her § 341 hearing." *Id.* While the Defendants' transfers are disclosed in their schedules, the Court concludes this does nothing to diminish the Court's finding that they acted with intent to defraud their creditors.

The Court also concludes that the same evidence demonstrates that the Defendants acted with actual intent to hinder or delay their creditors. In particular, the Court finds the Defendants liquidated their savings accounts and used the proceeds to reduce the note on their exempt homestead with the intent to prevent or defer the Plaintiff's attempts to collect its judgment.

***Conclusion***

Accordingly, judgment will be entered in favor of the Plaintiff, and the Defendants's discharge is denied.