DECISION
Before this Court is a motion by Defendant Samuel Celone (Celone) to dissolve the attachment on his automobile which was granted in favor of Plaintiff Alan A. Nunes (Nunes) on February 5, 2007. Celone relies upon G.L. 1956 § 9-26-4(13), which exempts from attachment automobiles owned by a debtor to the extent of $10,000. Nunes argues that Celone violated the Rhode Island Uniform Fraudulent Transfer Act (UFTA) by converting his interest in non-exempt real estate into exempt assets such as the automobile. Therefore, Nunes argues that Celone should not be able to benefit from the exemption statute and that the attachment on Celone's automobile should remain in effect.
 Facts and Travel
Nunes and Celone were involved in a partnership, the termination of which formed the basis of this lawsuit. Nunes filed his complaint on January 28, 2005, alleging that Celone violated the partnership agreement between the two parties by failing to contribute an equal share of capital. He further alleged that Celone was in violation of *Page 2 
the UFTA because he was attempting to "liquidate his assets to minimize or eliminate his ability to meet his financial obligations to the [p]artnership." (Complaint, ¶ 22.)
Nunes originally sought a temporary restraining order which would enjoin Celone from transferring his assets. For reasons which are not clear on this record, that request was denied. However, there is no indication that Nunes ever sought a pre-judgment attachment following the filing of the complaint.
On November 30, 2006, after a bench trial, this Court orderedinter alia that Celone shall pay to Nunes "$160,484.28, representing one[-]half of the differential of their respective capital contributions" to the partnership. (Order ¶ 2, Nov. 30, 2006.) The Court reserved ruling on costs and attorneys fees "pending a resolution of the fraudulent conveyance issue." Id. ¶ 6. That order also permitted Nunes to propound interrogatories concerning any asset transfers made by Celone within four years of the date that Nunes filed his complaint against Celone. Id. ¶ 5.
Based upon the discovery responses, Nunes brought a motion to enjoin Celone from transferring or encumbering any of his assets, and also to attach many of Celone's assets. (Pl's Mot. for Injunctive Relief and Mot. to Attach, Jan. 11, 2007.) (Pl's Mot. to Attach.) The Court entered an order provisionally enjoining Celone from transferring assets other than in "payment of ordinary living expenses until further order of this Court." (Order ¶ 1, Jan. 12, 2007.)
The Court held a hearing on Plaintiff's motion on January 29, 2007, and granted the motion for injunctive relief and to attach Celone's assets. (Order, Feb. 5, 2007.) The Court ordered that Celone may bring appropriate motions seeking "to exempt any of the aforementioned attached assets." Id. ¶ 2. The Court also ordered that a final judgment *Page 3 
would enter after Nunes submitted affidavits to support his claim for attorney fees. Id. ¶ 3.[1]
In addition to describing his various assets, the discovery responses revealed that several months prior to the filing of the complaint in this action, Celone had a one-half interest in certain real property at 21-23 Williams Street in Bristol, Rhode Island (Williams Street property). (Ex. 2 to Pl's Mot. to Attach.) That property was sold on November 2, 2004 — two months prior to the filing of the complaint — and Celone received approximately $120,000 as proceeds of the sale.Id. Plaintiff alleges that the various transfers of the proceeds from the sale were fraudulent transfers as to Nunes. Most notably, approximately $80,000 of the proceeds of the sale was used to pay for repairs to Celone's home at 26 Jane Lane in Bristol, Rhode Island (Jane Lane property). Id. Nunes also alleges that Celone violated an agreement not to transfer any assets while Nunes' motion for a temporary restraining order was pending between February 2, 2005 and February 7, 2005.
Celone has brought the present motion seeking to dissolve the attachment of his automobile. See § 9-26-4(13) (exempting from attachment "[a]ny and all motor vehicles owned by the debtor not to exceed an aggregate total of ten thousand dollars ($10,000)"). Nunes, however, argues that the use of non-exempt proceeds from the sale of the Williams Street property to pay off a loan on an exempt automobile violates the UFTA.[2] Therefore, Nunes objects to the dissolution of the attachment. *Page 4 
The Court held a hearing on the issue on February 28, 2007. At the hearing, the Court requested that the parties submit additional briefs on whether converting assets from non-exempt assets into exempt assets did in fact violate the UFTA. Only Celone submitted any additional briefing by the March 2, 2007 deadline.
 Analysis
The transfer of an asset qualifies as a fraudulent transfer "if the debtor made the transfer or incurred the obligation . . . [w]ith actual intent to hinder, delay, or defraud any creditor of the debtor." G.L. 1956 § 6-16-4(a)(1). Since a debtor can rarely be expected to acknowledge such actual intent, the statute provides eleven non-exclusive "badges of fraud" to which the Court may look to discern the intent of a debtor. Id. § 6-16-4(b). These include whether the transferred property remained in control of the debtor, whether the transfer was disclosed or concealed, whether the debtor was threatened with suit when the transfer was made, and whether reasonably equivalent value was received for the transferred property. Id.
At the outset, it is clear to the Court as a factual matter that Celone has engaged in what can be described as "pre-bankruptcy planning," or more accurately, pre-judgment planning. Nunes alleges, and it appears probable, that Celone knew of the existence of Nunes' capital contribution claim by November 2004, when the Williams Street property was sold. See § 6-16-4(b)(4) (providing that the threat of suit can evidence an intent to hinder, delay, or defraud). Celone spent the bulk of the proceeds on repairs to his home — an asset which typically enjoys exemption from attachment to the extent of $300,000. See G.L. 1956 § 9-26-4.1. Celone does not dispute that approximately $8,000 of the real estate proceeds were used to pay the loan which was secured by Celone's *Page 5 
automobile. Celone certainly knew of the potential for a large judgment against him by the time he used the proceeds to pay down the automobile loan and perform the home repairs, as those events occurred well after the filing of the complaint. The effect of these actions were to remove a substantial amount of non-exempt assets from the reach of Celone's creditors. Therefore, the Court must consider whether these actions were proper and, if so, whether any remedy exists.
The Court has not found, and the parties have not provided, any Rhode Island cases which address whether the conversion of non-exempt assets into exempt assets is sufficient to find that a debtor had actual intent to hinder, delay, or defraud a creditor under the UFTA. See §6-16-4(a)(1). However, section 727 of the Bankruptcy Code has a provision which allows a bankruptcy court to deny a discharge to any debtor who, "with intent to hinder, delay, or defraud a creditor . . . has transferred . . . property of the debtor" within one year of filing bankruptcy. 11 U.S.C. § 727(a)(2)(A). There appears to be an abundance of cases under § 727 which address whether pre-bankruptcy planning to make use of available exemptions constitutes the "intent" to "hinder, delay, or defraud" a creditor.[3] See generally John M. Norwood and Marianne M. Jennings, Before Declaring Bankruptcy, Move to Florida andBuy a House: The Ethics and Judicial Inconsistencies of Debtor'sConversions and Exemptions, 28 Sw. U. L. Rev. 439, 440 (1999) (Norwood,Move to Florida); 14 Collier on Bankruptcy, Ch. 9 atwww.lexis.com. (15th ed. rev.).[4] *Page 6 
The analysis of whether exemption planning constitutes fraudulent intent is extremely dependent upon the factual nuances of any particular case. However, several general propositions can be gleaned from the Court's review of the cases on this issue. The first is that merely converting non-exempt assets into exempt assets does not per se
constitute fraudulent intent even when done to place the assets out of the reach of creditors. See, e.g., In re Carey, 938 F.2d 1073, 1076
(10th Cir. 1991) (stating that "the conversion of non-exempt to exempt property for the purpose of placing the property out of the reach of creditors, without more, will not deprive the debtor of the exemption to which he otherwise would be entitled."). But see In re Spoor-Weston,Inc., 139 B.R. 1009, 1015 (Bankr. D. Okla. 1992) (finding that "conversion of non-exempt assets into exempt assets outside the usual course of business and on the eve of bankruptcy is wrong").
However, while a debtor has the right to engage in exemption planning, he does not have the right to defraud his creditors. Id. at 1077 (stating that the "desire to convert assets into exempt forms by itself does not constitute actual intent to defraud" but rather "extrinsic evidence of fraudulent intent is required to establish fraud"). In short, it appears that exemption planning alone is not fraudulent intent and that something more must be shown. The "badges of fraud" contained in the UFTA contain some of the factors that a Court must examine in order to find fraudulent intent. Section 6-16-4(b). In addition, the circumstances under which the conversions occurred bear on the existence of that intent. For example, courts have considered attempts by a debtor to conceal the conversions, the timing of the conversions, and the monetary value of the *Page 7 
assets converted, to determine the existence of fraudulent intent.See Carey, 938 F.2d at 1077.
It is undisputed that Celone spent the funds on the automobile loan and the home repairs while this suit was pending, and that the conversions amounted to approximately $90,000 of the $120,000 Williams Street property proceeds. Nunes also alleges that Celone violated an agreement not to transfer his assets while the temporary restraining order was pending. Under these circumstances, it is possible that Nunes could prove the requisite fraudulent intent.
However, before examining whether such fraudulent intent has been shown, or whether further proceedings are required to assess that intent, the Court will examine what remedy it could impose if the requisite intent was established. Therefore, the Court will assumearguendo that, under the circumstances of this case, a fraudulent transfer occurred within the meaning of § 6-16-4(a)(1). The only remedy the Court could provide in this situation, it seems, would be to deny Celone the benefit of the exemption statute and keep the attachment in place. However, the automobile clearly is exempted from attachment under § 9-26-4(13), and there does not appear to be any exception to the exemption contained in Title 9, Chapter 26.[5]
The Court also finds that the UFTA does not provide a means to deny Celone the benefit of the automobile exemption statute even if a fraudulent transfer occurred. The UFTA provides various remedies for creditors against transferees with respect to transferred property. Section 6-16-7. In the usual fraudulent transfer case, the debtor *Page 8 
will have transferred property away from his possession and received no equivalent value in return. Therefore, there would be no property of the debtor for the creditor to attach, and the UFTA permits the creditor to seek recovery of the asset from the transferee.[6] Since the transferee of the funds is not before this Court, however, the Court cannot grant any remedy with respect to the transferred funds which are now in the hands of the secured lender.
The UFTA also provides that "[s]ubject to applicable principles of equity and in accordance with applicable rules of civil procedure" the creditor may obtain an "injunction against further disposition by the debtor" or "[a]ny other relief the circumstances may require." Section6-16-7(a)(3)(i), (iii). However, the Court does not find that the broad language of this statute would permit the Court to simply ignore the exemption statute. Therefore, the Court must dissolve the attachment.
The Court is troubled that this holding tends to encourage transactions which serve to thwart the collection attempts of creditors such as Nunes, who hold valid claims, by allowing debtors to freely convert non-exempt assets into exempt assets when threatened with the imminent prospect of paying a large judgment. Perhaps the facts alleged by Nunes, if proved, would provide the basis for the denial of any discharge sought in bankruptcy. See 11 U.S.C. § 727(a)(2)(A). Perhaps the facts brought to light by Nunes are also worthy of consideration by our General Assembly. See In re Wilbur, 206 B.R. 1002, 1008 (Bankr. D. Fla. 1997) (quoting a Florida statute which provides that "[a]n exemption from attachment . . . is not effective if it results from a fraudulent transfer or conveyance"). However, in light of the clear mandates of the exemption *Page 9 
statute in § 9-26-4(13), this Court does not have the ability to maintain the attachment of the automobile, which is explicitly exempted from attachment, in order to remedy the allegedly fraudulent transfer of assets by Celone. Therefore, the Court must dissolve the attachment of Celone's automobile.
 Conclusion
After due consideration of the arguments advanced by counsel at oral argument and in their memoranda, the Court will dissolve the attachment with respect to Celone's automobile. Counsel for Celone may present an order consistent herewith to the Court after due notice to counsel for Nunes. Upon entry of that order, the Court will enter a final judgment in the form provided by Nunes at the February 28, 2007 hearing.
[1] The Court has further deferred the entry of judgment pending the resolution of the attachment issue which is the subject of this decision.
[2] Nunes originally objected to the valuation of the automobile, but at the hearing, his counsel stated that he would not press the valuation issue. Celone submitted an affidavit which appraised the value of the automobile at less than $10,000. However, his discovery responses contain a draft bankruptcy schedule which values the automobile at $12,000. (Ex. 2 to Pl's Mot. to Attach.)
[3] For convenience, the Court will refer to the actual intent to hinder, delay, or defraud as merely "fraudulent intent" for the rest of this decision. This short-hand is somewhat inaccurate, however, because intent to delay or hinder is equally actionable under the UFTA.
[4] The most notorious examples of converting non-exempt assets into exempt assets involve persons who not only convert assets, but who change their state of residency to find states with particularly generous exemption statutes. See Norwood and Jennings, Move toFlorida, 28 Sw. U. L. Rev. at 440.
[5] After the 2005 revision, the bankruptcy code now contains a provision which attempts to combat the conversion of non-exempt assets. 14 Collier on Bankruptcy, Ch. 9 ¶ 3.d.i, at www.lexis.com. (15th ed. rev.). Section 522(o) reduces the value of any homestead exemption if a debtor utilizes a fraudulent transfer of non-exempt assets in order to increase the value of the exemption.11 U.S.C. § 522(o). The Court has not been directed to any statutory authority which would serve a similar function in this case.
[6] Whether Nunes could recover the funds from the automobile lender depends upon the applicability of § 6-16-8. That section provides that a creditor may not recover an asset from a transferee "who took in good faith and for a reasonably equivalent value."