IN RE ANDREA ADELE STEWART, Chapter 7, Debtor.
GEYER & ASSOCIATES CPA'S, P.C., Plaintiff-Appellant,
v.
ANDREA ADELE STEWART, Defendant-Appellee.
IN RE KURT LOUIS GOETSCH, Chapter 7, Debtor.
GEYER & ASSOCIATES CPA'S, P.C., Plaintiff-Appellant,
v.
KURT LOUIS GOETSCH, Defendant-Appellee.
BAP No. CO-09-026, Bankr. No. 06-18474-HRT, Adv. No. 07-01106-HRT, BAP No. CO-09-027, Bankr. No. 06-18475-HRT, Adv. No. 07-01193-HRT.
United States Bankruptcy Appellate Panel, Tenth Circuit.
November 9, 2009.
Before NUGENT, RASURE, and KARLIN, Bankruptcy Judges.

OPINION[*]
NUGENT, Bankruptcy Judge
Plaintiff-Creditor Geyer & Associates, CPA's, P.C. ("Geyer") appeals two[1] judgments of the United States Bankruptcy Court for the District of Colorado overruling its 11 U.S.C. § 727(a)(2) and (a)(7) objections to the Chapter 7 discharges of Debtor Kurt Louis Goetsch and Debtor Andrea Adele Stewart.[2] Finding no reversible error, we AFFIRM.[3]

I. Background
Debtors Goetsch and Stewart are both certified public accountants and were previously employed by Geyer. During their employment with Geyer, Debtors signed non-compete/trade secret agreements (the "NCA") with Geyer. The NCA was for a term of three years and provided, in relevant part, that if Stewart or Goetsch solicited a former client of Geyer's, then Geyer would be entitled to liquidated damages amounting to one and one-half times the amount of Geyer's billings to that client over the prior twelve months. Under the NCA, if they performed any services for a former Geyer client, they were presumed to have solicited the business and would incur the liability even if the client initiated contact. Debtors could only avoid liability to Geyer by refusing to work for any Geyer client for three years following their termination of employment.
In 2003, Debtors left Geyer and formed Goetsch & Associates CPAs PC ("the PC"). After consulting with legal counsel, and believing the NCA not enforceable, Debtors began performing services for a number of former Geyer clients.[4] In 2004, Geyer sued the Debtors in state court, and on November 2, 2006, obtained a judgment in the amount of $251,799.49 plus interest against them jointly and severally. Geyer did not sue the PC.
Fifteen days later, on November 17, 2006, both Stewart and Goetsch filed individual Chapter 7 petitions. The PC also filed a Chapter 7 petition on the same date. Approximately three days later, Debtors formed a new entity, Goetch and Associates CPAs PLLC (the "PLLC").[5] That entity has the same premises, employees, telephone numbers, and client base as the PC and it engages in the same business.
The PC's bankruptcy schedules disclosed $37,279 worth of accounts receivable and $8,100 worth of office equipment as assets. The PC did not separately list the client list of the business or the business goodwill. The PC's schedules disclosed total liabilities of $33,217.00. Excluding salary claims filed by Debtors, only four creditor claims were filed in the PC case totaling $12,717.91. Debtors agreed to waive their claims against the estate so that 100% of the remaining filed claims would be paid.
In each individual case, Geyer filed a Complaint objecting to the respective debtor's discharge under § 727(a)(2), (3), (4) and (7). Because these two adversary complaints presented identical factual issues, the bankruptcy court combined them for trial. After trial, the bankruptcy court held that under the circumstances, it could not find the type of knowing fraudulent behavior that justifies denial of discharge under § 727.[6] This appeal followed.

II. Jurisdiction
This Court has jurisdiction over this appeal. Appellant timely filed its notices of appeal from the bankruptcy court's final orders and the parties have consented to this Court's jurisdiction because they have not elected to have the appeal heard by the United States District Court for the District of Colorado.[7]

III. Standard of Review
We review the bankruptcy court's findings regarding intent under a clearly erroneous standard.[8] "Review under the clearly erroneous standard is significantly deferential, requiring a definite and firm conviction that a mistake has been committed."[9]

IV. Analysis
On appeal, Geyer argues the bankruptcy court should have denied the Debtors' discharges under § 727(a)(2) via § 727(a)(7). Under § 727(a)(7), individual debtors may be denied a discharge for their conduct in connection with the bankruptcy of an insider if they commit any act specified in paragraphs (2), (3), (4), (5), or (6) of § 727(a). The gist of Geyer's argument is that the individual debtors should have been denied their discharge because they caused the PC to omit the goodwill and client list from the PC's schedules, and then had the PC transfer those assets to another related entity post-petition with the intent to hinder, delay, or defraud Geyer and/or the trustee. The bankruptcy court concluded that the PC qualified as an insider of each individual debtor. The sole issue on appeal is whether the debtors committed any of the acts set out in § 727(a)(2).[10]
Section 727(a)(2) provides:
(a) The court shall grant the debtor a discharge, unless 
. . .
(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed or has permitted to be transferred, removed, destroyed, mutilated, or concealed 
(A) property of the debtor, within one year before the date of the filing of the petition; or
(B) property of the estate, after the date of the filing of the petition[.][11]
To sustain an objection under § 727(a)(2), an objecting party must prove: (1) That the act complained of was done at a time subsequent to one year before the date of the filing of the petition; (2) With intent to hinder, delay or defraud a creditor or an officer of the estate charged with custody of property under the Bankruptcy Code; (3) That the act was that of the debtor or his duly authorized agent; and (4) That the act consisted of transferring, removing, destroying or concealing any of the debtor's property, or permitting any of these acts to be done.[12]
The provisions denying a discharge to a debtor are generally construed liberally in favor of the debtor and strictly against the creditor.[13] The initial burden is upon the objecting creditor to establish a prima facie case that the debtor has committed acts which will prevent his or her discharge. Once a prima facie case has been made, the burden shifts to the debtor to show that the transfer was justified under all the circumstances, i.e., furnish a satisfactory explanation.[14]
Geyer argues that the debtors' failure to list the intangible goodwill and the client list as assets on the PC's schedules, coupled with the post-petition transfer of assets of the PC to the PLLC, demonstrates that the debtors transferred or concealed those assets with intent to hinder, delay, or defraud Geyer or the trustee.[15] The bankruptcy court disagreed, finding a lack of fraudulent intent on the part of Debtors for the omission and the transfer. On appeal, Geyer argues that the evidence established seven "badges of fraud" and that the bankruptcy court erred.[16] We disagree.
Courts often look to certain "badges of fraud" in evaluating a debtor's intent under § 727(a)(2). Badges of fraud are facts which call for an explanation. The list of badges provides neither a counting rule, nor a mathematical formula.[17] Specific evidence may negate an inference of fraud notwithstanding the presence of a number of badges of fraud.[18] Thus, when determining intent from the existence of these badges, courts are mindful that the cases are peculiarly fact specific.[19]
The bankruptcy court found that neither the omission of the client list nor the transfer of assets post-petition were done with the intent to hinder, delay, or defraud Geyer because Geyer was not a creditor of the PC and therefore had no interest that could be affected by the transfer. This conclusion is supported by the fact that Geyer's judgment was only against the individual debtors.
Likewise, the bankruptcy court found that neither the omission of the client list nor the transfer of assets post-petition were done with the intent to hinder, delay, or defraud the trustee. The bankruptcy court examined the omission and transfer separately as to the trustee. Regarding the omission of the client list from the PC's schedule, the bankruptcy court found no fraudulent intent because the debtors explained the omission. Goetsch testified that he omitted the client list as an asset on the PC's bankruptcy schedules because it was not valuable by itself.[20] Goetsch explained that it is the level of service he provides that generates income, not the client list.[21] The PC's clients can retain another accounting firm at any time and are under no obligation to employ the PC.[22] As far as he and Stewart were concerned, the client list was as valuable as a list of names from the Yellow Pages.[23] The bankruptcy court found Debtors' explanation regarding the omission of the client list on the PC's schedule credible and agreed that the "client list does not have intrinsic value separate from the services provided by the professional practice."[24] Moreover, this conclusion is supported by the testimony of the PC's trustee, as well as the testimony of Geyer's own representative who admitted there was no value in a client list without a non-compete agreement. Accordingly, the bankruptcy court did not clearly err in holding that "[it] cannot find that the failure to list such assets betrays an intent to hinder, delay or defraud the trustee."[25]
Regarding the intent of the transfer of assets of the PC to the PLLC as to the trustee, the bankruptcy court found four badges of fraud present: (1) the existence of a special relationship between the transferor and transferee; (2) the retention of possession, benefit, or use of the property in question; (3) no consideration for the transfer of estate assets to the PLLC; and (4) a course of conduct indicating willful violation of the NCA coupled with an effort to avoid the consequences of their gamble that the NCA would not be enforced.[26] The bankruptcy court nonetheless concluded that the debtors had not acted with fraudulent intent concerning the transfer because: (1) there was no evidence of any effort to keep the transfer a secret; (2) the individual debtors cooperated and assisted the trustee in collecting the PC's accounts receivable and released their employee compensation claims which enabled the trustee to pay in full all other unsecured creditors of the PC; and (3) the schedules indicated that all of the equipment utilized by the successor entity was fully encumbered which suggested that the individual debtors would not have believed their continued use of the property could have the effect of depriving the trustee of assets he could liquidate for the benefit of creditors. The bankruptcy court considered the latter factor pivotal.
Geyer argues the debtors concealed the transfer by not preparing any documents formalizing the transfer of the assets. Although the transfers were not formally documented by the debtors, the trustee knew of all the assets that could be considered estate property that were being used in the new business. Goetsch testified that he and Stewart produced all records requested of them and even generated reports for the convenience of the trustee.[27] Thus, the evidence supports the bankruptcy court's conclusion that the lack of secrecy weighed in favor of finding no intent to defraud the trustee. The fact that all of the equipment utilized by the debtors in their successor entity was fully encumbered also weighs in favor of finding no intent to defraud the trustee because the transfer of these fully encumbered assets had no impact on the estate.
Geyer argues that the client list and goodwill were also fraudulently transferred to the LLC. The bankruptcy court concluded that the client list and goodwill had no intrinsic value apart from the services provided by the debtors to the clients. The record supports this conclusion. The transfer of a valueless asset suggests a lack of intent.[28] Because Geyer was not a creditor of the PC, Geyer was not harmed by the transfer. Nor was the PC's estate harmed because the debtors provided the trustee with documents and reports and assisted the trustee in collecting the PC's accounts receivable. Thus, the record supports the bankruptcy court's not finding intent to hinder, delay, or defraud on the part of the debtors. There was no clear error in the bankruptcy court's rejection of Geyer's § 727(a)(2) claim.

V. Conclusion
Our review of the entire record does not leave us with a definite and firm conviction that a mistake has been committed by the bankruptcy court. Therefore, the bankruptcy court's judgments are AFFIRMED.
NOTES
[*] This unpublished opinion is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. 10th Cir. BAP L.R. 8018-6(a).
[1] Because Geyer filed an identical brief in both appeals, the two appeals are companioned. See Order Companioning Appeals Nunc Pro Tunc to August 3, 2009, filed September 11, 2009.
[2] All future statutory references in text are to the Bankruptcy Code, Title 11 of the United States Code unless otherwise indicated.
[3] The parties did not request oral argument, and after examining the briefs and appellate record, the Court has determined unanimously that oral argument would not materially assist in the determination of this appeal. Fed. R. Bankr. P. 8012. The case is therefore ordered submitted without oral argument.
[4] April 27, 2009, Trial Transcript ("Trial Tr.") at 49, in Appellant's Appendix ("App.") at156.
[5] Trial Tr. at 22, 27, in App. at 129, 134.
[6] Order on Complaints to Determine Discharge on Debts Under 11 U.S.C. § 727 ("Appealed Order"), in App. at 84-93.
[7] 28 U.S.C. § 158(b); Fed. R. Bankr. P. 8001(e); Fed. R. Bankr. P. 8002(a).
[8] Holaday v. Seay (In re Seay), 215 B.R. 780, 788 (10th Cir. BAP 1997).
[9] Id. (internal quotation marks omitted).
[10] Geyer makes no argument on appeal regarding its §§ 727(a)(3) and (a)(4) claims. Indeed, these subsections were not even mentioned. Issues that are not briefed are deemed waived. See Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 679 (10th Cir. 1998). Accordingly, Geyer has abandoned or waived its appeal as to those claims. We therefore do not need to consider them.
[11] 11 U.S.C. § 727(a)(2).
[12] See 6-727 Collier on Bankruptcy ¶ 727.02[1] (Alan N. Resnick & Henry J. Summer eds., 16th ed. rev. 2009); Freelife Int'l, LLC v. Butler (In re Butler), 377 B.R. 895, 915 (Bankr. D. Utah 2006).
[13] 6-727 Collier on Bankruptcy ¶ 727.01[4] (Alan N. Resnick & Henry J. Summer eds., 16th ed. rev. 2009).
[14] McMullin v. Todd, 228 F.2d 139, 142 (10th Cir. 1955).
[15] Appellant's Br. at 4. For ease of reference, the Court will refer to the intangible goodwill and client list collectively as "the client list."
[16] Geyer claims the following seven indicia of fraudulent intent were proven at trial: (1) insider relationship between the parties; (2) the retention of possession, benefit, or use of the property in question; (3) the lack or inadequacy of consideration for the transfer; (4) the financial condition of the party sought to be charged both before and after the transaction at issue; (5) the existence or cumulative effect of the pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; (6) the general chronology of the events and transactions under inquiry; and (7) an attempt by debtor to keep the transfer a secret. Appellant's Br. at 5.
[17] In re Beverly, 374 B.R. 221, 236 (9th Cir. BAP 2007), aff'd in part, dismissed in part, 551 F.3d 1092 (9th Cir. 2008).
[18] Id.
[19] See In re Carey, 938 F.2d 1073, 1077 (10th Cir. 1991).
[20] Trial Tr. at 35, 37-38, in App. at 142, 144-145.
[21] Trial Tr. at 30, in App. at 137 ("There's nothing that provides revenue from that client list, unless we provide that service.").
[22] Trial Tr. at 35, in App. at 142 ("Our clients are free to come and go whenever they want, and if you're not providing the service to maintain that client, to keep him there, they're going to leave. That's the nature of the business.").
[23] Trial Tr. at 38, in App. at 145.
[24] Appealed Order at 6, in App. at 89.
[25] Id.
[26] Id. at 7. The bankruptcy court considered the financial condition of the PC at the time of the transfer as not important.
[27] Trial Tr. at 41, in App. at 148.
[28] See In re Dennis, 330 F.3d 696, 702 (5th Cir. 2003) (A minimal transfer strongly suggests a lack of intent. "Other courts agree that the low value of assets is one factor to be considered when determining whether the debtor had an intent to defraud.") (internal quotation marks omitted). But see Mill Creek Lumber & Supply Co. v. Stripling, 135 B.R. 133, 135 (N.D. Okla. 1990) (the transfer of an arguably worthless office building may be held to be fraudulent if transferred with the requisite intent).