# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

_____

No. 11-6003

_____

In re:  Jeremiah Joseph Paul and     *
      Stacy Marie Paul                   *
                                  *

      Debtors                       *
                                  *

John S. Lovald, Trustee        *  Appeal from the United States
                                  *  Bankruptcy Court for the
    Plaintiff - Appellant          *  District of South Dakota
                                  *

         v.                        *
                                  *

Marissa Hunter; Misti Paul      *
                                  *

    Defendants - Appellees      *

_____

Submitted:  February 16, 2011
Filed:  March 7, 2011

_____

Before KRESSEL, Chief Judge, FEDERMAN and SALADINO, Bankruptcy Judges

FEDERMAN, Bankruptcy Judge

      Plaintiff John S. Lovald, the Chapter 7 Trustee in the bankruptcy case of Jeremiah Joseph Paul and Stacy Marie Paul, appeals from the Order of the Bankruptcy

Court[1] finding in favor of Defendants Marissa Hunter and Misti Paul on the Trustee's adversary proceeding to recover fraudulent transfers from them. For the reasons that follow, the judgment is AFFIRMED.

## FACTUAL BACKGROUND

Curtis Paul is the father of Debtor Jeremiah Paul and Defendant Misti Paul, who is Jeremiah's sister. Curtis is married to Defendant Marissa Hunter, who is Jeremiah's step-mother.

Curtis became the owner of twenty acres of land in 1986. In order to avoid his own creditors, Curtis transferred the property to Jeremiah on August 21, 2003, with the oral agreement that Jeremiah would re-transfer the property at Curtis' request. Also on August 21, 2003, Curtis transferred a 1976 mobile home to Jeremiah. Jeremiah never lived on the twenty acres or used the mobile home.

Jeremiah then transferred the 1976 mobile home to his sister, Misti, on April 24, 2008. In addition, at Curtis' request, Jeremiah transferred the twenty acres to Marissa, his step-mother, by quitclaim deed dated January 9, 2009. Both transfers were made for no consideration. According to the Trustee, the value of the land transferred to Marissa was $31,738, and the value of the mobile home transferred to Misti was $6,392. The Defendants value the real estate at ten to fifteen thousand dollars, and the mobile home at five hundred dollars.

On August 19, 2009, Jeremiah and his wife, Stacy, filed a Chapter 7 bankruptcy petition. On April 23, 2010, the Trustee filed an adversary proceeding against Marissa and Misti to recover the transfers of the real estate and mobile home.

---

[1] The Honorable Charles L. Nail, Jr., United States Bankruptcy Judge for the District of South Dakota.

2

At trial, the Trustee contended that the transfers were avoidable under Wyoming's Uniform Fraudulent Transfer Act.[2] Section 34-14-205 of the Wyoming Statutes provides, in relevant part:

> (a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
>> (i) With actual intent to hinder, delay or defraud any creditor of the debtor; or
>>
>> (ii) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
>>
>>> (A) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
>>>
>>> (B) Intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.[3]

The Trustee bore the burden of proving, by clear and convincing evidence, that the transfers were actually or constructively fraudulent under this statute.[4] The Trustee

---

[2] The Trustee initially filed the Complaint under 11 U.S.C. § 548. When the Trustee amended his Complaint, he referred to "SDCL Chapter 54-8A," South Dakota's Uniform Fraudulent Transfer Act. The record is not clear as to the reason, but the parties all then proceeded under Wyoming's Uniform Fraudulent Transfer Act, perhaps because the real property is located in Wyoming. As it is undisputed that Wyoming law applies, we likewise analyze the case under Wyoming law.

[3] Wyo. Stat. Ann. § 34-14-205 (1977).

[4] *In re Baker*, 273 B.R. 892, 895 (Bankr. D. Wyo. 2002).

did not assert that Jeremiah made the transfers with actual intent to hinder, delay or defraud any of Jeremiah's creditors under subparagraph (i), or that Jeremiah intended to incur debts beyond his ability to pay under (ii)(B). And, the Bankruptcy Court found that the Trustee had proven that Jeremiah was the owner of the properties and that he transferred them to Marissa and Misti for less than reasonably equivalent value. Therefore, the sole issue on appeal is whether, at the time of the transfers, Jeremiah was engaged in or was about to engage in a business or transaction for which his remaining assets were unreasonably small in relation to the business or transaction. The Court found that the Trustee failed to so prove, and therefore held in favor of the Defendants. The Trustee appeals.

## STANDARD OF REVIEW

We review findings of fact for clear error, and legal conclusions *de novo.*[5] A finding is clearly erroneous when the reviewing court is "left with the definite and firm conviction that a mistake has been committed."[6]

## DISCUSSION

Under § 544(b) of the Bankruptcy Code, a trustee may avoid any transfer of an interest of the debtor in property that is voidable under applicable law by a creditor holding an allowable unsecured claim.[7] As stated above, the applicable law here is the Wyoming constructive fraud statute found at § 34-14-205(ii) of the Wyoming Statutes. The sole point on appeal is whether the Bankruptcy Court clearly erred in

---

[5] *First Nat'l Bank of Olathe v. Pontow (In re Pontow),* 111 F.3d 604, 609 (8th Cir. 1997); *Sholdan v. Dietz (In re Sholdan),* 108 F.3d 886, 888 (8th Cir. 1997); Fed. R. Bankr. P. 8013.

[6] *Anderson v. Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985).

[7] 11 U.S.C. § 544(b).

its factual finding that, at the time of the transfers to Marissa and Misti, Jeremiah was engaged in or was about to engage in a business or transaction for which his remaining assets were unreasonably small in relation to the business or transaction.

As the Bankruptcy Court pointed out in making its ruling from the Bench, the record contained no evidence concerning a "business or transaction" in which Jeremiah was going to engage following the two transfers. As such, the Bankruptcy Court looked to Jeremiah's carrying on his day-to-day life as the "business or transaction" at issue.

To rephrase, then, the issue is whether the Bankruptcy Court clearly erred in finding that, at the times of the transfers, Jeremiah's remaining assets were unreasonably small in relation to his day-to-day life. No Wyoming case has defined "unreasonably small" for these purposes.

The only evidence offered on that issue was the Debtors' bankruptcy schedules. Neither Jeremiah, nor his co-debtor wife, were called to testify at trial. The Trustee is correct that the schedules show that, as of the date of the filing of the bankruptcy petition, the Debtors were insolvent and that their expenses exceeded their income. However, as the Bankruptcy Court correctly held, it is the dates of the transfers, not the petition date, that are relevant.

The Trustee asserts that the Statement of Financial Affairs and Curtis' testimony showed that Jeremiah's financial condition was the same in the two years prior to the filing of the petition. Curtis testified about his own financial condition and the reasons why he transferred the property to Jeremiah in 2003, but he did not testify about Jeremiah's financial condition at any time.

The Trustee here asserts that the information provided in the schedules and SOFA amount to "uncontroverted circumstantial evidence" that Jeremiah's assets on

the transfer dates were the same as they were on the petition date. However, the schedules and SOFA are not determinative of the Debtors' assets and financial condition at the times of the transfers. For example, as the Defendants point out, Schedule F, which lists creditors and amounts owed, does not reflect any dates on which the debts were incurred, and much of the debt is identified as belonging to Stacy. Moreover, the Defendants point out that, while Jeremiah was unemployed at the date of the filing and for the sixty days prior to the filing, the Debtors earned income in excess of $60,000 per year in the two years prior to the filing of the petition, which would include the times of both transfers.

The Trustee asserts that the Defendants did not present any evidence that Jeremiah's financial condition was any different on the dates of the transfers than it was on the petition date. However, it was the Trustee who bore the burden of proof on that issue. In essence, relying solely on the schedules and SOFA as evidence of Jeremiah's financial condition nine and sixteen months previous necessarily requires speculation. In the absence of any other probative evidence, the Bankruptcy Court properly declined to engage in such speculation. As a result, the Bankruptcy Court did not clearly err in finding that the Trustee's evidence failed to meet his burden.

ACCORDINGLY, the judgment of the Bankruptcy Court is AFFIRMED.

———————————————